STATE of Minnesota, Respondent,

v.

Jerome CROSS, Appellant.

No. A08–0587.

Court of Appeals of Minnesota.

Sept. 8, 2009.

Lori Swanson, Attorney General, St. Paul, MN; and Susan Gaertner, Ramsey County Attorney, Mitchell L. Rothman, Assistant County Attorney, St. Paul, MN, for respondent.

Marie L. Wolf, Interim Chief Appellate Public Defender, Richard A. Schmitz, As-

sistant Public Defender, St. Paul, MN, for appellant.

Considered and decided by JOHNSON, Presiding Judge; PETERSON, Judge; and CONNOLLY, Judge.

## OPINION

JOHNSON, Judge.

Jerome Cross pleaded guilty to second-degree murder. At the plea hearing, there were altercations between persons in the gallery of the courtroom. After the plea hearing, there were additional altercations outside the courtroom and outside the courthouse between persons believed to have attended the plea hearing. To discourage similar incidents at Cross's sentencing hearing, and to aid in any subsequent investigation, the district court required attendees to identify themselves to deputy sheriffs before being admitted to the courtroom.

Cross argues that the security procedures employed by the district court at his sentencing hearing violated his Sixth Amendment right to a public trial. We conclude that those security procedures had no impact on his right to a public trial because the procedures did not result in the exclusion of any person who wished to attend the hearing. Therefore, we affirm.

## FACTS

On April 22, 2007, Cross boarded a bus in downtown St. Paul shortly after midnight with a loaded handgun in the waistband of his pants. Emmett Wilson–Shaw and Earl Ray Freeman were among the passengers on the bus. Cross boarded the bus with the intention of shooting Wilson–Shaw because, according to his statement at his plea hearing, Wilson–Shaw had threatened to kill him several months earlier. Cross drew his handgun and fired a shot at Wilson–Shaw. The bullet missed Wilson–Shaw but hit Freeman in the chest, killing him.

In June 2007, the state charged Cross with two counts of second-degree murder. In November 2007, Cross pleaded guilty to second-degree intentional murder without premeditation. At the conclusion of the plea hearing, there was a disturbance in the gallery of the courtroom between two groups of persons attending the hearing. The disturbance continued in the courthouse lobby and in the street outside the courthouse. There also was a drive-by shooting a few blocks from the courthouse and several altercations throughout the city in the following days. The Ramsey County Sheriff's Department believed that all of these incidents were related to Cross's case.

At the sentencing hearing in January 2008, the sheriff's department set up two tables outside the entrance to the courtroom. Deputy sheriffs sat behind the tables and recorded the names of persons who entered the courtroom. If a person did not have a state identification card or other proof of identification, the deputy sheriffs asked the person for his or her name and to allow a photograph to be taken.

When the sentencing hearing commenced, Cross objected to the security procedures, arguing that they violated his constitutional right to a public trial. The district court heard arguments from both parties and then made findings regarding the incidents that had taken place at the time of the plea hearing. The district court also made findings concerning the consequences of the security procedures.

Based on the testimony of a deputy sheriff, the district court found that no one who wished to attend the sentencing hearing had been refused entry to the courtroom. The district court also found that no one who wished to attend the sentencing hearing had been detained. The district court further found that no one had been subjected to a search other than the customary screening at the main entrance to the courthouse. The district court expressly considered the factors required by caselaw concerning a criminal defendant's right to a public trial. The district court then concluded that the security procedures that had been used were appropriate in light of the security risks and the interests of public safety.

The district court proceeded to sentence Cross to 391 months of imprisonment, consistent with the plea agreement and the arguments of defense counsel. Cross appeals.

## ISSUE

Did the district court violate Cross's Sixth Amendment right to a public trial by requiring persons attending his sentencing hearing to identify themselves to deputy sheriffs before being admitted to the courtroom?

## ANALYSIS

Cross argues that the district court erred by requiring persons attending his sentencing hearing to identify themselves before being admitted to the courtroom. Because Cross does not dispute the district court's factual findings, his argument presents a question of law, to which we apply a *de novo* standard of review. *State v. Shattuck,* 704 N.W.2d 131, 135 (Minn. 2005).

The United States Constitution and the Minnesota Constitution confer on criminal defendants the right to a public trial, with identical language: "In all criminal prosecutions, the accused shall enjoy the right to a ... public trial...." U.S. Const. amend. VI; Minn. Const. art. I, § 6.

> The requirement of a public trial is for the benefit of the accused; that the public may see he is fairly dealt with and not unjustly condemned, and that the presence of interested spectators may keep his triers keenly alive to a sense of their responsibility and to the importance of their functions.

*Waller v. Georgia,* 467 U.S. 39, 46, 104 S.Ct. 2210, 2215, 81 L.Ed.2d 31 (1984) (quotation omitted). We assume without deciding that the Sixth Amendment right to a public trial applies at a sentencing hearing. *Cf. Pollard v. United States,* 352 U.S. 354, 361, 77 S.Ct. 481, 486, 1 L.Ed.2d 393 (1957) ("assum[ing] *arguendo,*" in analyzing speedy trial issue, "that sentence is part of the trial for purposes of the Sixth Amendment"); *Apprendi v. New Jersey,* 530 U.S. 466, 476–78, 120 S.Ct. 2348, 2355–56, 147 L.Ed.2d 435 (2000) (applying Sixth Amendment right to jury trial to sentencing hearing at which factfinding determined enhancement of sentence).

 Notwithstanding the text of the Sixth Amendment, the right to a public trial is not absolute. Rather, the closure of a courtroom during a criminal proceeding may be justified if (1) " 'the party seeking to close the hearing ... advance[s] an overriding interest that is likely to be prejudiced,' " (2) the closure is " 'no broader than necessary to protect that interest,' " (3) the district court considers " 'reasonable alternatives to closing the proceeding,' " and (4) the district court makes "findings adequate to support the

closure." *State v. Fageroos,* 531 N.W.2d 199, 201–02 (Minn.1995) (alteration omitted) (quoting *Waller,* 467 U.S. at 48, 104 S.Ct. at 2216).

■ The threshold question in analyzing whether a criminal defendant has been deprived of the right to a public trial is whether there has been a "closure" of the courtroom. *State v. Mahkuk,* 736 N.W.2d 675, 685 (Minn.2007). If so, a district court must apply the four-part *Waller* test. *State v. Bobo,* 770 N.W.2d 129, 139, 2009 WL 2382560, at *7 (Minn.2009). Some federal circuit courts have interpreted the Sixth Amendment to require a *Waller* analysis only for a *full* closure of the courtroom and have applied a less-stringent "substantial reason" test to a *partial* closure. *See Mahkuk,* 736 N.W.2d at 685 (citing *Garcia v. Bertsch,* 470 F.3d 748, 752–53 (8th Cir.2006)). In Minnesota, however, the supreme court has applied the four-part *Waller* test to both full closures and partial closures of a courtroom. *Id.*

■ In this case, the sentencing hearing was open to the public at all times. Although admission to the courtroom was conditioned on the requirement that attendees identify themselves to a deputy sheriff, no one who wished to attend the sentencing hearing was prevented from entering the courtroom. In light of that fact, it cannot be said that the courtroom was "closed" to any member of the public. Thus, the requirement that attendees identify themselves before being admitted to the courtroom, by itself, does not constitute a "closure" for purposes of *Waller.* *See State v. Conway,* 108 Ohio St.3d 214, 842 N.E.2d 996, 1022 (2006) (holding that identification check at courtroom entrance to enforce witness sequestration order

was not closure requiring *Waller* analysis); *see also People v. Smalls,* 275 A.D.2d 645, 713 N.Y.S.2d 179, 179 (2000) (holding that unspecified screening procedure at courtroom entrance was not closure of courtroom).

■ Cross also contends that the security procedures used at his sentencing hearing should be deemed at least a partial closure because of their tendency to discourage persons from attending the hearing. He reasons that the result is the same, regardless whether a deputy sheriff excludes a person from the courtroom or a person excludes himself or herself voluntarily. Cross's argument is not based on a finding by the district court that anyone was discouraged from attending, and there was no witness testimony on that issue. Instead, Cross relies on a professional statement by his counsel in the district court, which appears to have been based on her first-hand knowledge, that one or more persons who had come to the courthouse for the purpose of attending the hearing did not follow through "as a result of the police officers … asking for names before entry." Even if trial counsel's statement were deemed competent evidence and adopted as a finding of fact, *cf. Mahkuk,* 736 N.W.2d at 684, Cross's argument would fail. A voluntary decision by a member of the public to avoid courtroom security procedures designed merely to record the identities of persons attending a hearing does not constitute a "closure" for purposes of the Sixth Amendment right to a public trial. *See United States v. Shryock,* 342 F.3d 948, 974–75 (9th Cir. 2003) (approving identification check and sign-in requirements that allegedly "discourage[ed] Appellants' family members from attending the trial," without conducting *Waller* analysis); *Williams v. State,*

690 N.E.2d 162, 168–69 (Ind.1997) (holding that identification check at courtroom entrance was not closure because it was not "an affirmative act specifically barring some or all members of the public from attending," even if it discouraged entrance by "persons who feared the consequences that a potential background check would entail").

Cross contends further that the security procedures used in this case are analogous to the measures taken in *Mahkuk*, where an undercover officer sat in the courtroom gallery and identified known gang members, who then were removed to prevent them from intimidating witnesses. 736 N.W.2d at 684. The defendant's brother and cousin were among those excluded. The supreme court treated the security procedures as a partial closure and applied the four-part *Waller* test. *Id.* at 685. But *Mahkuk* is easily distinguishable because two persons actually were removed from the courtroom in that case. *Id.*; *see also Fageroos,* 531 N.W.2d at 203 (remanding for evidentiary hearing and *Waller* analysis to determine propriety of closing courtroom during testimony of minor complainant and her minor sister); *cf. State v. Lindsey,* 632 N.W.2d 652, 660 (Minn.2001) (affirming exclusion of two unaccompanied minors, without *Waller* analysis, because exclusion was "not a true closure, in the sense of excluding all or even a significant portion of the public"). In this case, however, no one was removed from the courtroom or prevented from entering. Thus, there was no "closure" of the courtroom. If there had been a closure, the district court's consideration of the four *Waller* factors would have been available for appellate review. But the district court's finding that no one was excluded from the courtroom obviated the need for a *Waller* analysis.

## DECISION

The district court did not err by requiring persons attending Cross's sentencing hearing to identify themselves before being admitted to the courtroom because the requirement did not cause any member of the public to be excluded from the courtroom.

**Affirmed.**