**David WILLIAMS, Appellant,**

**v.**

**UNITED STATES, Appellee.**

**No. 04–CF–1169.**

District of Columbia Court of Appeals.

Argued Dec. 7, 2007.

Decided Oct. 8, 2009.

Andrea Roth, Public Defender Service, with whom James Klein and Jaclyn Frankfurt, Public Defender Service, were on the brief, for appellant.

1. In the present case, there was no objection to the instruction, and Lampkins has not demonstrated plain error.

John P. Gidez, Assistant United States Attorney, with whom Jeffrey A. Taylor, United States Attorney at the time the brief was filed, and Roy W. McLeese III, Thomas J. Tourish, Jr., David C. Woll, and Eric P. Gallun, Assistant United States Attorneys, were on the brief, for appellee.

Before REID and GLICKMAN, Associate Judges, and FARRELL, Senior Judge.*

GLICKMAN, Associate Judge:

We have held that where a single count of an indictment encompasses separate incidents on which a conviction could be based, the judge must instruct the jury that it has to reach unanimous agreement on at least one of the incidents in order to return a verdict of guilty. Appellant David Williams requested such a jury instruction in this case with respect to the charge that he had threatened to injure Rhea Shaw, his former girlfriend, in violation of D.C.Code § 22–1810 (2001). The judge's denial of the requested unanimity instruction requires us to reverse appellant's conviction on that count.

## I.

David Williams was Rhea Shaw's boyfriend from 1998 to 2002. Following their break-up, Williams was arrested for allegedly burglarizing Shaw's apartment and sexually assaulting her. Williams was tried on those charges in August 2002 and was acquitted. The present case concerns accusations against Williams made by Rhea Shaw, her friend Stacy Coffin, her cousin Lacey Shaw, and her new boyfriend Corbett Turner, regarding threats, assaults and destruction of property allegedly committed by Williams in the aftermath of the 2002 trial. Williams was indicted on those charges in 2003 and tried before a jury in 2004. In the end, the jury found Williams guilty only on one count, which charged him with having threatened to injure Rhea Shaw "[b]etween on or about August 1, 2002, and on or about December 1, 2002."

To prove Williams guilty of this single charge (and another charge of threatening Stacy Coffin), the government presented evidence of several incidents involving threats allegedly made by Williams to different individuals at different times and places. The witnesses to these incidents described them as follows:

(1) Rhea Shaw testified that in September 2002, approximately two weeks after the August trial, Williams confronted her in person outside her former home, berated her and said "he was going to get [her]."

(2) After that confrontation, Rhea Shaw testified, Williams called her on the telephone on several occasions "on and off for about ... a month" and said "he was going to get [her]."

(3) Lacey Shaw testified that Williams came to her window some time during the Fall of 2002 and agitatedly questioned her about Rhea Shaw's whereabouts. During this visit, Lacey Shaw reported, Williams started screaming obscenities and declared, "I'm going to kill that bitch."

(4) Corbett Turner testified to a telephone conversation in September 2002 in which Williams said that he was "going to get [Rhea Shaw] and that bitch Stacy [Coffin]" and that Turner "better not get in his way."

(5) Finally, Stacy Coffin testified that, on many occasions between September and December 2002, in telephone calls

* Judge Farrell was an Associate Judge of the court at the time of argument. His status changed to Senior Judge on January 23, 2009.

and in personal visits, Williams told her that "if he ever caught [Rhea Shaw], he was going to kill her." According to Coffin, Williams also repeatedly threatened to kill her too.

Toward the end of trial, the judge asked the parties to consider over a weekend recess whether there was a unanimity issue with respect to the two threats counts. The following week, the parties stated their positions. The prosecutor proposed that the jurors be instructed that they would have to agree only that Williams threatened Rhea Shaw (or Stacy Coffin) "on one or more occasions" between August and December 2002. Defense counsel disagreed, arguing that the jurors should have to agree not merely that Williams made a threat against Shaw (or Coffin), but also on the "specific incident" or incidents in which he did so. The judge appreciated the unanimity problem that would be posed if different jurors were to rely on different incidents to find Williams guilty of a single threats count. Nonetheless, expressing concern that it would be impossible for the jury to "pick a date" on which any particular threat was made because the witnesses could not specify the dates of the incidents they reported, the judge declined to instruct the jury in accordance with the defense request. She asked defense counsel whether he would be satisfied instead with an instruction requiring the jury to agree on whether Williams made "the same kind of a threat," "[m]eaning by phone or in person." Counsel rejected that compromise, saying he wanted an instruction calling for unanimity not merely as to the "same kind of threat," but also as to the "[same] time period or incident."

In lieu of requiring the jury to agree unanimously on a specific incident to support a conviction on either of the threats counts, the judge instructed as follows:

> In order to reach a jury verdict, every juror has to agree with the verdict. Your verdict has to be unanimous.
>
> In particular, the threats charges, there are two threats charges that talk about a period from August 1 through December 1 of 2002. You have to make a determination whether there is proof beyond a reasonable doubt that there was a threat to injure Ms. Shaw and then separately whether there was a threat to injure [Stacy] Coffin. You cannot mix those two up and say I think there was a threat to Rhea or I think that there was a threat to [Stacy] and find guilt that way.
>
> They are separate charges. As you consider each of those charges separately, you have to agree on one or more occasion during that time period.
>
> So, if one of you says well, I think that there was a[n] in person threat and others of you say, well, I don't think that there were any in person threats, I think that there were only threats by phone, if you don't have 12 people agreeing to the nature of the threat on at least one if not more occasions, you do not have unanimity.

The jury found Williams guilty of threatening Rhea Shaw. It was unable to reach a verdict as to the charge of threatening Stacy Coffin. The government later dismissed that charge.[1]

1. Additionally, the jury acquitted Williams of counts charging him with assaulting Rhea Shaw and Corbett Turner with intent to kill while armed, committing an aggravated assault on Turner while armed, possessing a firearm during a crime of violence, and carrying a dangerous weapon. The jury did not reach a verdict on a count charging Williams with destruction of property (an automobile belonging to Stacy Coffin) and thereafter that count was dismissed.

## II.

Williams claims the trial judge committed reversible constitutional error in declining to give the special unanimity instruction he requested with respect to the threats count on which he was convicted. He was entitled to such an instruction, he argues, because the evidence in support of that count encompassed several separate incidents of criminal threats. The government disagrees. It contends that a special unanimity instruction was unnecessary because Williams engaged in a continuing course of conduct and because the jurors were not required to agree as to the manner in which the single crime of threats was committed. Alternatively, the government argues, the judge's instructions "adequately conveyed" the need for unanimous agreement on a specific incident,[2] and any error was harmless beyond a reasonable doubt. We conclude that Williams has the better of the arguments and is entitled to relief.

The government's proof at trial included testimony that Williams made threats against Rhea Shaw to different people by different means (in person or over the telephone) at different times and in different locations. Each of those alleged incidents constituted a discrete violation of the threats statute, because "the act of threatening [is] the intended unit of prosecution"[3] and "[t]he crime was complete as soon as the threat was communicated to a third party," regardless of whether it was conveyed to the intended victim.[4] Thus, even though the alleged threats were against the same person, were derived from the same grievances, and may have been charged permissibly in a single count,[5] they did not coalesce into a "single continuous episode."[6] Rather, they were "factually separate" criminal incidents.[7] Indeed, related incidents of threats against the same complainant often have been prosecuted as separate offenses in cases comparable to this one.[8]

2. Brief for Appellee at 16.

3. *Murray v. United States,* 358 A.2d 314, 321 n. 23 (D.C.1976). *Cf. Washington v. United States,* 760 A.2d 187, 198 (D.C.2000) (holding that because the crime of stalking is statutorily "defined as a series of incidents that are part of a course of conduct extending over a period of time .... it is the continuing course of conduct which constitutes the offense, not the individual discrete actions making up the course of conduct") (internal quotation marks omitted).

4. *Beard v. United States,* 535 A.2d 1373, 1378 (D.C.1988).

5. *See United States v. Klat,* 332 U.S.App. D.C. 230, 238, 156 F.3d 1258, 1266 (1998) (holding that a single count charging numerous threatening acts is not duplicitous if the acts represented "a single, continuing scheme" spanning "a short period of time") (internal quotation marks omitted).

6. *Owens v. United States,* 497 A.2d 1086, 1096 (D.C.1985).

7. *Gray v. United States,* 544 A.2d 1255, 1257 (D.C.1988) (explaining that incidents are "*factually* separate when separate criminal acts have occurred at different times and were separated by intervening events; when they occurred at different places; when the defendant has reached a fork in the road and has decided to invade a different interest; or when the first act has come to an end and the next act is motivated by a fresh impulse" (citations omitted)). *Cf. id.* at 1258 (holding that repeated acts of sexual assault *during a single encounter,* with "no significant break between the events," constituted "a single course of action [rather than] several separate rapes").

8. *See, e.g., Jenkins v. United States,* 902 A.2d 79 (D.C.2006). In contrast, we presume that a continuous stream of threats against a single person in a single brief encounter *would* coalesce into a single threats offense rather than constitute separate multiple offenses—much as a succession of physical blows in a continuing attack on a single victim is treated as a single assault in our cases. *See, e.g.,*

In *Scarborough v. United States,*[9] this court held that when a single count encompasses two (or more) factually separate criminal incidents, the Sixth Amendment requirement of a unanimous verdict obliges the judge to instruct the jury that it must reach unanimous agreement as to a particular incident in order to find the defendant guilty as charged.[10] "Such an instruction is necessary to prevent the possibility that some jurors might vote to convict based solely on one incident while others vote to convict based solely on the other."[11] Without a requirement that the jurors agree on the same incident, we said, the right to a unanimous jury verdict would be "meaningless."[12]

*Scarborough's* requirement of a special unanimity instruction reflects the generally accepted view of what the Sixth Amendment requires when proof of two or more separate offenses is offered to establish a defendant's guilt of a single charge. For example, one of the leading treatises on federal procedure states the basic rule as follows:

> Logically, the guarantee of unanimity prohibits instructions and verdicts that leave uncertainty as to which offense the jury found proven beyond a reasonable doubt. Jurors are not required to agree unanimously on alternative theories of criminal liability for a single offense.... But if the jury is instructed that an offense may be committed in two separate ways, and those two means actually constitute separate offenses, a unanimous finding of guilt under one theory or the other is required for a guilty verdict to stand.[13]

The government argues, however, that the Supreme Court's 1991 decision in *Schad v. Arizona*[14] overturned the requirement of juror unanimity with respect to the particular violation that establishes a defendant's guilt of a single charge. We disagree. The issue in *Schad* was not whether jury unanimity is required when one count encompasses factually separate incidents, but only whether unanimity is required when the jury is presented with alternative theories of criminal liability for a single incident.

Accused of strangling a man in the course of stealing his car, the defendant in *Schad* was charged with first-degree murder under a state statute defining the requisite mens rea as *either* premeditation *or* "the intent required for [less than first-degree] murder combined with the commission of an independently culpable felony."[15] (Under state law, the attempt to commit the felony was considered the legal equivalent of premeditation.[16]) Because the prosecution relied at trial on both theories to prove the defendant's mens rea, the defendant argued that the Sixth Amendment required the jury to agree unanimously as to which one was established by the evidence. A majority of the Justices rejected that claim, relying on the general principle that jurors need not agree on the

*Glymph v. United States,* 490 A.2d 1157, 1160–61 (D.C.1985).

9. 522 A.2d 869 (D.C.1987) (en banc).

10. *Id.* at 871.

11. *Id.*

12. *Id.* at 873.

13. 3 Charles Alan Wright, Nancy F. King & Susan R. Klein, Federal Practice and Procedure: Criminal § 511, at 8–10 (3d ed.2004) (footnotes omitted).

14. 501 U.S. 624, 111 S.Ct. 2491, 115 L.Ed.2d 555 (1991).

15. *Id.* at 632, 111 S.Ct. 2491.

16. *Id.*

particular "means" or "mode" of committing a single crime or an element thereof.[17]

The *Schad* Court acknowledged, however, that as a matter of Due Process, there may come a "point at which differences between means become so important that they may not reasonably be viewed as alternatives to a common end, but must be treated as differentiating what the Constitution requires to be treated as separate offenses."[18] For instance, Justice Scalia observed, "[w]e would not permit ... an indictment charging [as a single offense] that the defendant assaulted either X on Tuesday or Y on Wednesday, despite the 'moral equivalence' of those two acts."[19] In other words, "the Due Process Clause recognizes a point at which distinct incidents go from being different means of committing the same crime, to being different crimes."[20] When the "distinct incidents" amount to "different crimes," jury unanimity on the particular incident supporting the verdict is mandated by the Sixth Amendment.

In *Richardson v. United States,*[21] the Court offered helpful guidance for determining when that point of demarcation is reached. The defendant in *Richardson* was accused of having engaged in a "continuing criminal enterprise" (CCE) in violation of 21 U.S.C. § 848(a). To convict him of that offense, the prosecution needed to prove he had committed a "continuing series of violations" of the drug laws (i.e., a series consisting of at least three such violations).[22] At trial, the prosecution presented evidence of more than three violations. The question before the Supreme Court was whether the jury had to reach unanimous agreement not only on the fact that the defendant had committed a continuing series of violations, but also on which three (or more) specific violations made up that series.

In addressing that question, the Court began from the premises that federal crimes "are made up of factual elements," and that the jury "cannot convict unless it unanimously finds that the Government has proved each element."[23] On the other hand, the Court noted (citing, inter alia, the plurality opinion in *Schad*), the "jury need not always decide unanimously which of several possible sets of underlying brute facts make up a particular element, say, which of several possible means the defendant used to commit an element of the crime."[24] Accordingly, the Court rea-

17. *See id.* at 631–32, 111 S.Ct. 2491 (plurality opinion) ("We have never suggested that in returning general verdicts ... the jurors should be required to agree upon a single means of commission, any more than the indictments were required to specify one alone.... We see no reason ... why the rule that the jury need not agree as to mere means of satisfying the *actus reus* element of an offense should not apply equally to alternative means of satisfying the element of *mens rea.*"); *id.* at 649, 111 S.Ct. 2491 (Scalia, J., concurring) ("As the plurality observes, it has long been the general rule that when a single crime can be committed in various ways, jurors need not agree upon the mode of commission.").

18. *Id.* at 633, 111 S.Ct. 2491 (plurality opinion).

19. *Id.* at 651, 111 S.Ct. 2491.

20. *United States v. Hurt,* 381 U.S.App. D.C. 259, 265, 527 F.3d 1347, 1353 (2008).

21. 526 U.S. 813, 119 S.Ct. 1707, 143 L.Ed.2d 985 (1999).

22. *Id.* at 815, 119 S.Ct. 1707 (internal quotation marks omitted); *see also id.* at 818, 119 S.Ct. 1707 ("We assume, but do not decide, that the necessary number is three, the number used in this case.").

23. *Id.* at 817, 119 S.Ct. 1707.

24. *Id.* For example, the Court stated,

> [w]here ... an element of robbery is force or the threat of force, some jurors might

soned, the unanimity issue with respect to CCE prosecutions turned on

> whether the statute's phrase "series of violations" refers to one element [of the offense], namely a "series," in respect to which the "violations" constitute the underlying brute facts or means, or whether those words create several elements, namely the several "violations," in respect to *each* of which the jury must agree unanimously and separately.... If the statute creates a single element, a "series," in respect to which individual violations are but the means, then the jury need only agree that the defendant committed at least three of all the underlying crimes the Government has tried to prove. The jury need not agree about which three. On the other hand, if the statute makes each "violation" a separate element, then the jury must agree unanimously about which three crimes the defendant committed.[25]

Concluding that each individual drug law violation in the series is indeed a separate element of the offense, and not merely a means of committing or establishing an element, the Court held that the CCE statute requires jury unanimity as to which three (or more) violations the defendant committed.

The distinction between "means" and "elements" on which *Richardson* turns is not easy to draw in every case. (It was not easy in *Richardson* itself.) Nonetheless, our holding in *Scarborough* is consistent with and confirmed by *Richardson's* analysis. When a single count encompasses factually separate criminal incidents, each incident is not merely an alternative "means" of committing an element (or multiple elements) of the charged offense; rather, each incident actually constitutes one or more elements of the offense in exactly the same way that each drug violation incident constitutes one element of the CCE offense discussed in *Richardson.* The only difference, an immaterial one, is between an incident equating to a single element (as in *Richardson* ) and an incident equating to all of the elements (or some combination less than all). In the present case, each threat incident independently embodied all of the elements of the charged threats offense. Accordingly, just as all jurors in a CCE case must agree on which specific drug law violation incidents the defendant committed because each such incident was an element of the offense, so too the jurors in the present case had to agree on which specific threats incident (or incidents) Williams committed because each incident was an aggregation of all the elements of the threats offense.[26]

> conclude that the defendant used a knife to create the threat; others might conclude he used a gun. But that disagreement—a disagreement about means—would not matter as long as all 12 jurors unanimously concluded that the Government had proved the necessary related element, namely that the defendant had threatened force.

*Id.*

**25.** *Id.* at 817–18, 119 S.Ct. 1707.

**26.** We pause to acknowledge that *Schad* and *Richardson* arguably conflict with another aspect of *Scarborough's* holding, one that is not implicated in the present case. *Scarborough* held that a special unanimity instruction is required not only when a single count encompasses factually separate incidents (as here), but also when "there is evidence tending to show *legally* separate incidents." 522 A.2d at 873 (emphasis in the original). Incidents could be "legally separate," the court explained, when the defendant presented separate defenses to different underlying facts—for instance, "when a defendant presents separate defenses to a single count charging receipt of different items of stolen property at the same time." *Id.* Whether this part of *Scarborough's* holding remains valid after *Schad* and *Richardson* is an issue we need not and do not consider.

And hence the jury should have been so instructed. At the time of Williams's trial, the District of Columbia pattern jury instructions (commonly referred to as the "Redbook") contained the following special unanimity instruction:

> Defendant has been charged with one count of ________. There has been evidence of more than one act or incident upon which a conviction on this count may be based. [Describe the separate acts/incidents.] You may find the defendant guilty on this count if the government proves beyond a reasonable doubt that defendant committed either of these acts/incidents. However, in order to return a guilty verdict on this count, all jurors must unanimously agree as to at least one of the specific acts/incidents. In other words, you must all agree that defendant committed [*describe first act/incident* ] or that defendant committed [describe second act/incident ].[27]

The judge did not deliver an instruction such as this, and we are not persuaded that the instruction she did give was comparable or adequate to ensure the requisite degree of unanimity. While a judge may have considerable discretion in fashioning an appropriate jury instruction to meet the needs of a case, the judge's foremost duty—particularly regarding a matter as fundamental as the requirement of a unanimous verdict—is to "give the jury an accurate and fair statement of the law."[28] In our estimation, the unanimity instruction given here fell short of that goal. By itself, the cryptic one-sentence admonition to "agree on one or more occasion during that time period" could have been understood as directing the jury to be unanimous with respect to at least one specific threats incident. But unfortunately, the judge immediately went on to explain that "if one of you says well, I think that there was a[n] in person threat and others of you say, well, I don't think that there were any in person threats, I think that there were only threats by phone, if you don't have 12 people agreeing to the nature of the threat on at least one if not more occasions, you do not have unanimity." This elaboration, though intended to clarify, was confusing. Jurors reasonably could have understood it to mean they merely had to agree that Williams communicated a threat in person or by telephone (i.e., they had to agree on the "nature of the threat") at least once between August and December in order to convict him. If so, the instruction would not have required the jurors to agree on a specific incident, because the government's witnesses testified to multiple in-person and telephonic incidents during that period.

The judge rightly considered it unrealistic to require the jury to agree on a precise date on which Williams communicated any threat. The witnesses did not date the incidents they described with precision. But the date was not itself an element of the offense, and a proper instruction (such as the one in the Redbook), which is all that defense counsel sought, would not have demanded that sort of precision. If the judge thought it appropriate, she could have supplemented a proper special unanimity instruction with the caveat that the jurors could decide which (if any) witness's report of a specific threatening communication they all credited without having to agree on exactly

27. Criminal Jury Instructions for the District of Columbia, No. 2.72 (4th ed.1993). The 2008 revision of the Redbook includes virtually the same special unanimity instruction as No. 2.72A.

28. *Pannu v. Jacobson,* 909 A.2d 178, 198 (D.C.2006).

when during the August–December time frame the communication occurred.

*Scarborough* held that the failure to give a constitutionally adequate special unanimity instruction requires reversal of the defendant's conviction (if the claim was preserved by a proper objection at trial) "unless we can say that the error was harmless beyond a reasonable doubt." [29] We cannot say that here. Without belaboring the point, we may say that each of the key prosecution witnesses evinced biases, testified inconsistently, or manifested other credibility shortcomings (which the defense elicited on cross-examination). Confirmation of that assessment may be found in the jury's not-guilty verdict on some counts of the indictment and its inability to reach a verdict on others. We cannot say that all the jurors undoubtedly must have believed any one particular witness. Furthermore, in closing argument the prosecutor did not urge the jury to rely on only a single incident to find Williams guilty of the threats count; instead he invoked all of the alleged incidents together. On this record, we are compelled to recognize that "some jurors reasonably could have believed" that one specific alleged threats incident occurred "but disbelieved" others encompassed in the same count, "while other jurors reasonably could have believed" the opposite.[30] It follows that "the verdict may not have been unanimous as to just what appellant did, and, thus, the instructional error would not have been harmless beyond a reasonable doubt." [31] We therefore must reverse appellant's conviction.

29. 522 A.2d at 873.

30. *Id.*

31. *Id.* (internal citation and quotation marks omitted).