**STATE of Minnesota, Respondent,**

v.

**Daniel Thomas INFANTE, Appellant.**

**No. A10–692.**

Court of Appeals of Minnesota.

April 19, 2011.

350

John J. Muhar, Itasca County Attorney, Grand Rapids, MN; and Lori Swanson, Attorney General, Kimberly R. Parker, Assistant Attorney General, St. Paul, MN, for respondent.

David W. Merchant, Chief Appellate Public Defender, Steven P. Russett, Assistant Public Defender, St. Paul, MN, for appellant.

Considered and decided by SHUMAKER, Presiding Judge; HUDSON, Judge; and SCHELLHAS, Judge.

## OPINION

SCHELLHAS, Judge.

Following his conviction of second-degree assault, appellant argues that he was denied his right to a public trial when his sister and a "young child" were removed from the courtroom during the state's closing argument. Appellant also argues that the district court plainly erred by failing to instruct the jury that it must unanimously decide which of two physical acts constituted the charged assault, if either. Because the two alleged acts were part of a single behavioral incident and did not constitute distinct instances of an element of the charge, we conclude that a unanimity instruction was not necessary. But because the court failed to comply with *Waller*, 467 U.S. at 48, 104 S.Ct. at 2216, when excluding appellant's sister and the "young child" from the courtroom, we remand for compliance with *Waller*.

1. Infante's descriptions of these events differed somewhat from D.I.'s, but this court must assume the jury believed the state's witnesses and disbelieved Infante. *See State v.*

## FACTS

Respondent State of Minnesota charged appellant Daniel Infante with one count of second-degree assault in violation of Minn. Stat. § 609.222, subd. 1 (2008), based on his actions after he became upset with his wife, D.I., for spending the night at a cabin with two of his friends. At trial, D.I. testified that she returned home from the cabin around 7:15 a.m. and went to bed. Around 8:00 or 8:30, D.I. heard Infante's truck pull into the driveway followed by two gunshots, and then heard Infante enter the house. D.I. stayed in bed and felt a small gun tap her temple twice. She looked up and saw Infante's eyes, and his eyes scared her. Infante then called D.I. a "slut" and a "bitch" and accused her of sleeping with his friends at the cabin, using a "very, very angry" tone. D.I. was shocked and scared. Infante then left the house, but called D.I. four times over the next two hours, leaving threatening voicemails on her phone.

■ Infante returned to the house around 10:30 or 11:30 a.m. with a .357 Magnum. He threw an empty prescription pill bottle at D.I., told her he had taken all of his pills, and sat on the couch "methodically load[ing]" the .357 Magnum. Each time he put a bullet in he looked at D.I., who was scared because she did not know if Infante had taken all of his pills. Infante lay on the couch for about three hours with the loaded gun. D.I. told him that she needed to call for help if he had overdosed, but he told her that "nobody would get through that door, nobody, nobody." D.I. feared for her children's safety if they came to the door. After about three hours, Infante left the house again.[1]

*Dalbec*, 789 N.W.2d 508, 510 n. 1 (Minn.App. 2010) (citing *State v. Thao*, 649 N.W.2d 414, 420 (Minn.2002)), *review denied* (Minn. Dec. 22, 2010).

During the state's closing argument, the prosecutor paused and asked to approach the bench. The bench conference was not transcribed, but after the jury left the courtroom to deliberate, the district court summarized what occurred:

> [The prosecutor] was in his final argument, and I think it is [Infante's] sister who came in with a young child, and [the prosecutor] was going to object to that— did object to it, and ... [a]s soon as the bailiff saw the minor child in the courtroom, he did walk and escort them out of the courtroom. I don't think there was anything more to it than that, unless one of the attorneys wants to say anything on that.

Both the prosecutor and Infante's counsel declined to add anything more.

In the state's closing argument, the prosecutor told the jury the only reasonable conclusion from the evidence was that Infante assaulted D.I. "twice on May 31, with two separate weapons, both of them loaded." The court instructed the jury that each juror must agree with the verdict and that the verdict "must be unanimous," but did not instruct the jury that it needed to unanimously agree about which of Infante's acts—putting the small gun to D.I.'s head or "methodically load[ing]" the .357 Magnum while looking her in the eye—constituted the assault. Infante did not object to the instructions as given or request that an additional unanimity instruction be given.

The jury found Infante guilty, and the district court convicted him. This appeal follows.

## ISSUES

I. Did the district court violate Infante's constitutional right to a public trial by allowing the bailiff to remove his sister and a "young child" from the courtroom during the state's closing argument?

II. Did the district court plainly err by failing to instruct the jury that it needed to unanimously agree on which of Infante's acts constituted the assault?

## ANALYSIS

### I. Right to a Public Trial

Infante first argues that the district court violated his constitutional right to a public trial when it allowed the bailiff to order Infante's sister and a "young child" out of the courtroom during the state's closing argument.

■■■ "In all criminal prosecutions, the accused shall enjoy the right to a ... public trial...." U.S. Const. amend. VI; *see also* Minn. Const. art. I, § 6 (same).

> [T]he requirement of a public trial is for the benefit of the accused; that the public may see he is fairly dealt with and not unjustly condemned, and that the presence of interested spectators may keep his triers keenly alive to a sense of their responsibility and to the importance of their functions.

*State v. Mahkuk*, 736 N.W.2d 675, 684 (Minn.2007) (quoting *Waller*, 467 U.S. at 46, 104 S.Ct. at 2215) (quotation marks omitted). On appeal, we consider de novo whether a defendant's right to a public trial has been violated. *State v. Bobo*, 770 N.W.2d 129, 139 (Minn.2009). Violation of this right "is considered a structural error that is not subject to a harmless error analysis." *Id.* The defendant need not timely object to preserve a structural error for appeal; instead, structural errors generally "require automatic reversal because such errors call into question the very accuracy and reliability of the trial process." *State v. Everson*, 749 N.W.2d 340, 347–48 (Minn.2008) (quotations omitted). But the remedy for a violation of a defendant's right to a public trial "should be

appropriate to the violation, and a retrial is not required if a remand will remedy the violation." *Bobo,* 770 N.W.2d at 139.

■ "[T]he right to a public trial is not absolute and 'may give way in certain cases to other rights or interests.'" *Id.* (quoting *Waller,* 467 U.S. at 45, 104 S.Ct. at 2215). Circumstances justifying a closure "will be rare, however, and the balance of interests must be struck with special care." *Waller,* 467 U.S. at 45, 104 S.Ct. at 2215. To overcome the "presumption of openness," *id.* (quotation omitted), (1) the party seeking closure must "advance an overriding interest that is likely to be prejudiced" if closure is denied, (2) "the closure must be no broader than necessary to protect that interest," (3) the district court "must consider reasonable alternatives to closing the proceeding," and (4) the court "must make findings adequate to support the closure." *Bobo,* 770 N.W.2d at 139 (quoting *Waller,* 467 U.S. at 48, 104 S.Ct. at 2216). This four-part test applies even if the court excludes only a few individuals. *See Mahkuk,* 736 N.W.2d at 684–85 (applying the *Waller* standard to the exclusion of the defendant's brother and cousin from the courtroom); *State v. Cross,* 771 N.W.2d 879, 882 (Minn.App.2009) ("In Minnesota, . . . the supreme court has applied the four-part *Waller* test to both full closures and partial closures of the courtroom.").

■ To support closure, the court must find "that closure is essential to preserve higher values and is narrowly tailored to serve that interest," and the findings must be "specific enough that a reviewing court can determine whether the closure order was properly entered." *Waller,* 467 U.S. at 45, 104 S.Ct. at 2215 (quotation omitted). The findings must be based on evidence that is put on the record. *See Mahkuk,* 736 N.W.2d at 685 (stating that the *Waller* standard had not

been met where no record evidence supported the district court's findings, and stating that "[t]he prosecutor's assertions . . . are not evidence").

■ Here, the district court recounted on the record what had occurred during the state's closing argument. But none of the four *Waller* factors was met. First, the state did not "advance an overriding interest that [was] likely to be prejudiced" if the sister and child were allowed to remain in the courtroom. The court mentioned that the state "object[ed]" to the sister's coming into the courtroom with a young child, but did not recite what, if any, basis there was for that objection. On appeal, the state argues that the basis for removing the child was the "subject matter" of the trial which was "unfit for minor consumption," and that removal of Infante's sister was justified because she was merely the child's "caretaker." But the record does not reflect that this reasoning was ever provided to the district court, and contains no evidence of the child's age, the relationship between the child and Infante's sister, or whether the sister might have an independent interest in observing the proceedings.

Second, assuming the interest at stake was protecting the "young child" from the subject matter of the trial, the record does not establish that the removal of the child and Infante's sister was narrowly tailored to protect this interest, or that the district court considered alternatives to removing the sister. For example, the court could have asked the bailiff to let the sister know that she was welcome, but could not bring in the child; this would give the sister an opportunity to have another relative who might have been willing to wait outside the courtroom watch the child. Nothing in the record suggests that this, or any other consideration of less-drastic alternatives, took place.

Finally, the district court did not make the necessary findings based on record evidence. The record contains no evidence of the circumstances necessitating exclusion of the child—such as his or her age—or of the circumstances necessitating exclusion of the sister. On appeal, the state asserts that the sister was merely the child's "caretaker" and therefore had to leave with the child, but these assertions are not evidence. *See Mahkuk,* 736 N.W.2d at 685 (stating that prosecutor's assertions are not evidence and are insufficient to support *Waller* findings).

The state cites *State v. Lindsey,* 632 N.W.2d 652 (Minn.2001), for the proposition that Infante's right to a public trial was not violated because the "court's action was not a true closure, in the sense of excluding all or even a significant portion of the public from the trial." But since *Lindsey,* the supreme court reaffirmed in *Mahkuk* that the full four-part *Waller* test must be applied to situations as seemingly minor as the exclusion of two of the defendant's relatives. *Mahkuk,* 736 N.W.2d at 684–85. While the *Waller* test may be easily met, appellant has a constitutional right to findings, based on record evidence, to support the closure. *See id.* at 685.

■ Because the district court excluded Infante's sister and the child without satisfying the *Waller* test, Infante's constitutional rights were violated. But reversal of the conviction and remand for a new trial is not necessary—instead, we remand for an evidentiary hearing and findings under *Waller. See Bobo,* 770 N.W.2d at 139 (stating that "retrial is not required if a remand will remedy the violation"); *State v. Biebinger,* 585 N.W.2d 384, 385 (Minn.1998) (stating that "the appropriate initial remedy" after closure without necessary findings "is a remand for an evidentiary hearing, not retrial").

## II. Unanimous Verdict

Infante next argues that the district court erred by failing to instruct the jury that they must reach a unanimous decision as to which of his acts constituted the assault—putting the small gun to D.I.'s head in the bedroom, or "methodically load[ing]" the .357 on the sofa two or three hours later.

■ Infante did not request such an instruction at the time of trial. Generally, "[a] party is prohibited from assigning as error any portion of the charge or omission unless the party objects to the instructions before they are given to the jury." *State v. Pendleton,* 725 N.W.2d 717, 730 (Minn.2007) (quotation omitted). But this court "may consider plain error not brought to the district court's attention if the error affects substantial rights." *Id.* (citing Minn. R.Crim. P. 31.02). Plain-error analysis "involves four steps." *State v. Jenkins,* 782 N.W.2d 211, 229 (Minn. 2010). First, the court examines "(1) whether there was error, (2) whether the error was plain, and (3) whether the error affected the defendant's substantial rights." *Id.* at 230. Only after these first three steps have been met does the court assess whether it "should address the error to ensure fairness and the integrity of the judicial proceedings." *Id.* (quotation omitted). Because we conclude that the district court did not err in this case, we do not reach the other three steps.

■ "Jury verdicts in all criminal cases must be unanimous." *Pendleton,* 725 N.W.2d at 730 (citing Minn. R.Crim. P. 26.01, subd. 1(5)). "To achieve that end, a jury must unanimously find that the government has proved each element of the offense." *Id.* at 730–31 (quotation omitted). But "if the statute establishes *alternative means* for satisfying an element, unanimity on the *means* is not required."

*State v. Ihle,* 640 N.W.2d 910, 918 (Minn. 2002) (emphasis added) (citing *Richardson v. United States,* 526 U.S. 813, 817–18, 119 S.Ct. 1707, 1710, 143 L.Ed.2d 985 (1999)). The jury need not unanimously agree on each element's underlying facts so long as the differing factual circumstances show "equivalent blameworthiness or culpability." *Pendleton,* 725 N.W.2d at 731 (quotation omitted).

In *Pendleton,* the defendant was charged with felony murder predicated on kidnapping. 725 N.W.2d at 723. The state may prove kidnapping by showing that the defendant confined or moved another person without consent, among other things, either "to facilitate commission of any felony or flight thereafter;" *or* "to commit great bodily harm or to terrorize the victim or another." *Id.* at 729–30 (quoting Minn.Stat. § 609.25, subd. 1 (2004)). The supreme court held that because the kidnapping statute contained multiple means of establishing the act of kidnapping, the jury was not required to come to a unanimous decision as to whether the defendant confined the victim in order to facilitate the commission of the murder, to facilitate flight, to commit great bodily harm, or to terrorize the victim or another. *Id.* at 732–33. "The rule that jurors need not agree on the *mode* of commission of a crime ... is probably indispensible in a system that requires a unanimous jury verdict to convict." *Id.* at 733 (emphasis added) (quotation omitted).

In *Ihle,* the defendant was charged with one count of obstructing legal process during a traffic stop. 640 N.W.2d at 913–14. The state may prove that the defendant obstructed legal process by showing that he "obstruct[ed], hinder[ed], prevent[ed], resist[ed], or interfer[ed]" with the police. *Id.* at 919 (quoting Minn.Stat. § 609.50, subd. 1(1), (2) (2000)) (quotation marks omitted). The supreme court held that the

jury was not required to unanimously decide which of these modes the defendant employed in finding him guilty of obstructing legal process. *Id.*

Infante relies primarily on *State v. Stempf,* in which the state charged the defendant with a single count of possession of methamphetamine "but alleged two *distinct acts* to support the conviction: (1) that he possessed methamphetamine found at ... his workplace; and (2) that he possessed methamphetamine found in the truck in which he was riding when he arrived at work." 627 N.W.2d 352, 357 (Minn.App.2001) (emphasis added). This court held that the district court's "refusal to give a specific unanimity instruction violated [the defendant's] right to a unanimous verdict" because "[s]ome jurors could have believed [the defendant] possessed the methamphetamine found on the premises while other jurors could have believed [the defendant] possessed the methamphetamine found in the truck." *Id.* at 358. But *Stempf* is distinguishable from this case for two reasons.

***Single Behavioral Incident***

 First, while *Stempf* combined two "separate and distinct culpable acts" that "lack[ed] unity of time and place" under a single charge, 627 N.W.2d at 358–59, Infante's actions in this case were part of a single behavioral incident. "[A] single behavioral incident is the result of a single motivation directed towards a single criminal goal." *State v. Eaton,* 292 N.W.2d 260, 266 (Minn.1980). While the concept of the single behavioral incident is generally employed in determining sentencing on multiple offenses, *see, e.g., State v. Bauer,* 792 N.W.2d 825, 827–28 (Minn.2011), the Minnesota Supreme Court has also used it in the context of a jury-unanimity case, *see Ihle,* 640 N.W.2d at 919 (where defendant's actions in obstructing-legal-process case were part of a "single behavioral incident,"

jury was not required to unanimously agree on his specific actions); *see also Stempf*, 627 N.W.2d at 358 (declining to decide whether "a different result would be warranted [if] the separate acts constitute[d] a continuing course of conduct").

Other courts have addressed this issue head-on in the unanimity context. In *Williams v. United States*, the District of Columbia Court of Appeals held that the defendant was entitled to a unanimity instruction where his culpable acts "did not coalesce into a single continuous episode" but were instead "factually separate criminal incidents." 981 A.2d 1224, 1227 (D.C. 2009) (quotations omitted). The court explained:

> [I]ncidents are *factually* separate when separate criminal acts have occurred at different times and were separated by intervening events; when they occurred at different places; when the defendant has reached a fork in the road and has decided to invade a different interest; or when the first act has come to an end and the next act is motivated by a fresh impulse.

*Id.* at 1227 n. 7 (quotation omitted). In *State v. Corliss*, the State of Vermont charged the defendant with a single count of burglary, but presented evidence of two separate entries into the residence. 149 Vt. 100, 539 A.2d 557, 558–59 (1987). The Supreme Court of Vermont held that the defendant was entitled to a unanimity instruction because the two entries were not "so closely related in time or circumstance so as to constitute one felonious act." *Id.* at 559. And in *State v. Petrich*, a sexual-assault case, the Supreme Court of Washington held that the state must elect the act on which it will rely for its prosecution unless it can show "one continuing offense" as opposed to "several distinct acts." 101 Wash.2d 566, 683 P.2d 173, 177 (1984), *overruled on other grounds by State v.*

*Kitchen*, 110 Wash.2d 403, 756 P.2d 105 (1988). The court explained that "[t]o determine whether one continuing offense may be charged, the facts must be evaluated in a common sense manner." *Id.*

This court recently distinguished *Stempf* on similar grounds in *State v. Dalbec*, 789 N.W.2d 508, 512 (Minn.App.2010), *review denied* (Minn. Dec. 22, 2010). In *Dalbec*, the defendant was involved in "several incidents" spanning a period of approximately 24 hours for which he was charged with one count of gross-misdemeanor domestic assault. 789 N.W.2d at 509. The *Dalbec* court noted that *Stempf* involved "two independent incidents" that "occurred in different places and at different times," while "the various acts [in *Dalbec* ] occurred over a period of time, but they all occurred at the same place and involved a single victim." *Id.* at 512. The *Dalbec* court consequently concluded that the district court did not plainly err by not providing a unanimity instruction. *Id.* at 513.

▮▮▮ Here, like in *Dalbec*, Infante's two actions occurred at the same place and involved the same victim. Moreover, they occurred over a short period of time, and were connected by appellant's four threatening voicemails. Both actions shared a single criminal goal—to cause D.I. to fear for her life or her safety after spending the night in a cabin with other men. Both actions were therefore part of a single behavioral incident, and cannot be considered "distinct acts" like the two drug possessions in *Stempf*.

### Elements vs. Means

The second reason *Stempf* is distinguishable is that the two acts in *Stempf* were elements of the crime, whereas Infante's actions in this case were mere means for accomplishing an element. The defendant in *Stempf* was charged with a single count of possession of methamphetamine, which

comprised two elements: "(1) unlawful possession; and (2) one or more mixtures containing methamphetamine." 627 N.W.2d at 357 (citing Minn.Stat. § 152.025, subd. 2(1) (2000)). The state introduced evidence of two distinct instances of the possession element: possession at the defendant's workplace and in his truck. *Id.* at 354. Here, on the other hand, the state charged Infante with a single count of second-degree assault, the elements of which are (1) assault; and (2) with a dangerous weapon. Minn.Stat. § 609.222, subd. 1; *see also Dalbec,* 789 N.W.2d at 513 (stating that "the act of assault is the element of the crime of domestic assault"). The "assault" element can be proved by any of three different means: taking any action with intent to cause fear in another of immediate bodily harm or death, intentionally inflicting bodily harm upon another, or attempting to inflict bodily harm upon another. Minn.Stat. § 609.02, subd. 10 (2008); *Dalbec,* 789 N.W.2d at 512–13. The parties agree that this case involves only the intent to cause fear; however, this act may itself have been caused by either of two different means: Infante's putting the small gun to D.I.'s head, or Infante's "methodically load[ing]" the .357 on the sofa while looking D.I. in the eye.

The United States Supreme Court has illustrated that acts such as Infante's constitute means of committing an element of a crime, rather than two distinct instances of an element of the crime itself. The Court explained:

> Where, for example, an element of robbery is force or the threat of force, some jurors might conclude that the defendant used a knife to create the threat; others might conclude he used a gun. But that disagreement—a disagreement about means—would not matter as long as all 12 jurors unanimously concluded that the Government had proved the

necessary related element, namely, that the defendant had threatened force.

*Richardson,* 526 U.S. at 817, 119 S.Ct. at 1710, *quoted in State v. Kelbel,* 648 N.W.2d 690, 700 n. 1 (Minn.2002). The acts in this case track with the Court's example. The defendant in the example threatened force, which was one means of proving an element of burglary, by using either a gun or a knife. Here, Infante caused imminent fear of bodily harm or death, which is one means of proving assault, by either putting a small gun to D.I.'s head or "methodically load[ing]" a .357 while looking her in the eye. The criminal act was the causing of fear, not the handling of the weapons; they were merely the means to a frightening end. As in the *Richardson* example, the jurors in this case need not have unanimously agreed on which of these actions caused D.I. to fear for her safety so long as they unanimously concluded that the state had proved the "necessary related element"—that Infante assaulted D.I.

## DECISION

Because the district court's jury instructions were not erroneous, we affirm on that point. But we remand for an evidentiary hearing and findings under *Waller* to allow the district court to determine whether it was justified in excluding Infante's sister and the child from the courtroom.

**Affirmed in part and remanded.**