**STATE of Minnesota, Respondent,**

v.

**Cal Charles DALBEC, Appellant.**

**No. A09–1876.**

Court of Appeals of Minnesota.

Oct. 19, 2010.

Lori Swanson, Attorney General, St. Paul, MN; and Melanie Ford, St. Louis County Attorney, Jessica Jo Smith, Assistant County Attorney, Duluth, MN, for respondent.

David W. Merchant, Chief Appellate Public Defender, Lydia M. Villalva Lijo, Assistant Public Defender, St. Paul, MN, for appellant.

Considered and decided by KLAPHAKE, Presiding Judge; SHUMAKER, Judge; and SCHELLHAS, Judge.

## OPINION

KLAPHAKE, Judge.

Appellant Cal Charles Dalbec challenges his conviction for gross misdemeanor domestic assault, Minn.Stat. § 609.2242, subd. 2 (2008), arguing that he was deprived of his right to a fair trial because the district court failed to instruct the jury that it must unanimously agree on the act that constituted the offense.

Because the district court did not plainly err by failing to instruct the jury on the doctrine of specific unanimity, we affirm.

## FACTS

During a period of approximately 24 hours spanning November 30 to December 1, 2008, appellant was involved in several incidents that led to the filing of criminal charges against him, a jury trial, and appellant's conviction of gross misdemeanor domestic assault, Minn.Stat. § 609.2242, subd. 2 (2008).

At the time of the offense, appellant was living with his fiancée, S.M., in a Duluth apartment. During an early morning argument between the two on November 30, appellant pulled the mattress off the bed, dumping S.M. onto the floor and pushed her into a filing cabinet. Appellant pushed

her again, flipped a coffee table over, and then picked S.M. up and tossed her through a doorway. S.M. grabbed appellant's shirt, tearing it, and appellant called 911. Appellant told the responding officer that S.M. had attacked him. The police advised S.M. to leave the apartment, so she called her child's father, L.G., to pick up their son, who was sleeping at the apartment, and left. S.M. sat in her car for two hours. After texting back and forth, appellant and S.M. decided to get together and talk things over.

After a brief reconciliation, the couple later began to argue again, finally agreeing that their relationship was over. Appellant took his daughter and left. Appellant returned at about 10:00 p.m. that night and pushed past S.M. when she opened the door. She attempted to call 911, but appellant grabbed her phone and broke it. Appellant left the apartment, and S.M. locked the door and used the deadbolt. Appellant kicked the door in, breaking the door jamb and the lock. He pushed S.M. around the apartment. Appellant then took a wooden plant stand and smashed it against the walls and threatened S.M. with the stand. At this point, appellant's friend advised him to leave.

L.G. arrived at the apartment about this time and allowed S.M. to use his phone to call the police. After the police left, S.M.'s friend, J.N., came to stay with her. J.N. took photos of S.M.'s bruises and helped her barricade the back door. J.N. brought another acquaintance with her. The three were still awake into the early morning hours of December 1, 2008, when appellant again entered the apartment. The three

attempted to hold the bedroom door shut, but appellant forced it open. Appellant demanded his cell phone, and S.M. returned it. Appellant is approximately 6 feet tall, and S.M. is 5'2".[1]

Appellant was charged with one count of gross misdemeanor domestic assault.[2] The district court instructed the jury on the elements of domestic assault in the alternative, stating that the state must prove that on or about November 30, 2008, appellant committed an act with the intent of causing fear of immediate bodily harm or intended to inflict or attempted to inflict bodily harm on S.M. The court further instructed the jury that each element must be proved beyond a reasonable doubt and that their verdict must be unanimous. Appellant's counsel did not object to these instructions. In chambers, the district court and both counsel discussed whether the jury instructions should be limited to one means of committing an assault or should include alternative means. Appellant's counsel agreed with the state and the district court that the three alternative means of committing an assault should be combined into one instruction. Appellant's counsel did not request a specific unanimity instruction.

## ISSUE

Did the district court plainly err by failing to instruct the jury that there must be specific unanimity in their verdict on what conduct constituted assault?

## ANALYSIS

 Generally, the failure to object to the district court's jury instructions results

---

1. Appellant's descriptions of these incidents differed radically from S.M.'s, but the jury must have accepted S.M.'s testimony and rejected appellant's testimony. *See State v. Thao*, 649 N.W.2d 414, 420 (Minn.2002) (stating that appellate court does not "retry the facts; we assume the jury believed the state's

witnesses and disbelieved the defendant's witnesses").

2. Appellant was also charged, but acquitted, of one count of interfering with an emergency call. Minn.Stat. § 609.78, subd. 2 (2008).

in forfeiture of the right to appeal based on the instructions, unless the defendant can show plain error affecting substantial rights or an error of fundamental law. *State v. Vance*, 734 N.W.2d 650, 654–55 (Minn.2007). Error is "plain" if it is "clear" or "obvious" or "the error contravenes case law, a rule, or a standard of conduct." *Id.* at 658 (quotation omitted). An error affects substantial rights if it was prejudicial and affected the outcome of the case. *Id.* at 659. A jury instruction is erroneous if it materially misstates the law. *Id.* at 656. We examine the jury instructions in their entirety to determine if "they fairly and adequately explain the law" and "define the crime charged and explain the elements of the offense to the jury." *Id.*

Appellant contends that the district court failed to instruct the jury that it must unanimously agree on which of appellant's acts constituted the offense. Specifically, appellant argues that the district court erred by instructing the jury that the state must prove that on or about November 30, 2008, appellant committed an act with the intent of causing fear of immediate bodily harm or intended or attempted to inflict bodily harm on the victim, S.M., rather than instructing the jury that it must agree on which of several acts constituted this element.

■ A jury cannot convict a defendant unless it unanimously finds that the government has proved each element of the charged offense. *Richardson v. United States*, 526 U.S. 813, 817, 119 S.Ct. 1707, 1710, 143 L.Ed.2d 985 (1999). But the jury need not "always decide unanimously which of several possible sets of underlying brute facts make up a particular element, [such as] which of several possible means the defendant used to commit an element of the crime." *Id.*

■ Minnesota law is consistent with federal law and requires verdict unanimity. *See* Minn. R.Crim. P. 26.01, subd. 1(5); *State v. Pendleton*, 725 N.W.2d 717, 730–31 (Minn.2007); *State v. Ihle*, 640 N.W.2d 910, 918 (Minn.2002). Thus, a jury must reach a unanimous verdict on all elements of the crime but need not agree on the underlying facts. *Pendleton*, 725 N.W.2d at 731. But different factual courses of conduct or states of mind that are offered to prove an element of a crime must show "equivalent blameworthiness or culpability." *Id.* (quotation omitted).

In *Pendleton*, the defendant was charged with aiding felony murder while committing kidnapping. *Id.* at 729. The district court instructed the jury in the alternative, stating that kidnapping occurs when a person is removed from one place to another in order to (1) facilitate commission of any felony; (2) flee after committing a crime; or (3) commit great bodily harm or terrorize a victim. *Id.* at 730. Pendleton did not object to the instruction at trial, but in his appeal he asserted that the district court had erred by not instructing the jury that it must unanimously agree on the purpose for which he acted. *Id.* The supreme court disagreed, concluding that any of the three "kidnapping purposes" were "not so inherently distinct" that the jury could unanimously agree on the element of kidnapping without agreeing on the alternative purposes for the kidnapping. *Id.* at 732.

Likewise, in *Ihle*, the defendant was charged with one count of obstructing legal process during an incident arising out of a traffic stop involving his fiancée. 640 N.W.2d at 913. During the stop, defendant interfered with the officer who made the stop, ran away when the officer decided to arrest him, and resisted arrest. *Id.* The supreme court noted that the offense of obstructing legal process is committed

by actions that obstruct, hinder, prevent, resist, or interfere with legal process, conduct that is not inherently different, and that the various types of conduct all occurred during a single behavioral incident. *Id.* at 919. The supreme court concluded that the element of obstruction could be shown by different means. *Id.*

In a similar vein, we concluded in *State v. Rucker*, 752 N.W.2d 538 (Minn.App. 2008), *review denied* (Minn. Sept. 23, 2008), that a defendant charged with criminal sexual conduct over a period of time is not entitled to an instruction that the jury must unanimously agree on each incident, when the state did not emphasize certain incidents and defendant did not assert separate defenses for each incident. *Id.* at 548.

Appellant relies primarily on this court's decision in *State v. Stempf*, 627 N.W.2d 352 (Minn.App.2001). In that case, the defendant was charged with one count of possession of methamphetamine. *Id.* at 354. The state offered two independent incidents to prove that Stempf constructively possessed the methamphetamine; first, police discovered methamphetamine while executing a search warrant at defendant's workplace, and second, when defendant arrived at work later in the day, police searched the truck in which he was a passenger and discovered more of the drug. *Id.* Defendant asserted two different defenses to these incidents: he requested that the district court instruct the jury to consider the two incidents independently and to reach unanimous agreement on whether the state had proved the underlying conduct. When the court refused to do so, we reversed, concluding that the acts of possession were two discrete incidents. *Id.* at 358. In regard to proving constructive possession, other people had access to Stempf's work area, and the owner of the truck could not be conclusively

excluded from possession of the methamphetamine discovered in the truck, so Stempf's defenses to the two instances of possession differed. *Id.* at 354. Thus, some of the jurors could have concluded that defendant possessed methamphetamine in the truck but not in the workplace, while others could have concluded the opposite. *Id.* at 357. Because the very act of possession was an element of the crime, rather than just a means of proving the element of possession, the jury was required to reach a unanimous verdict on which act constituted the offense. *Id.* Further, in *Stempf*, the acts "occurred in different places and at different times." *Id.* at 358. Here, the various acts occurred over a period of time, but they all occurred at the same place and involved a single victim.

 *Pendleton*, the kidnapping case, provides a useful analysis for distinguishing between elements and means of proving elements. Minn.Stat. § 609.25 (2008), prohibiting the crime of kidnapping, states that "[w]hoever, for any of the following purposes, confines or removes from one place to another, any person without the person's consent ... is guilty of kidnapping." Thereafter follows a list of four possible means by which kidnapping can be committed. *Id.* As the *Pendleton* court suggested, the element of the kidnapping offense was the removal of a person from one place to another or confinement, for a criminal purpose; the various purposes are means for committing the act of kidnapping. *Pendleton*, 725 N.W.2d at 732. The wording of the domestic assault statute, Minn.Stat. § 609.2242, subd. 1 (2008), is similar: "Whoever does any of the following against a family or household member ... commits an assault." Thereafter follows alternative means by which an assault may be committed, either by intentionally causing fear of immediate

bodily harm or death or by intentionally inflicting or attempting to inflict bodily harm.

▇ Thus, consistent with *Pendleton,* the act of assault is the element of the crime of domestic assault, and an assault can be committed in any of three ways. In theory, each of appellant's acts over the course of November 30, 2008, could be one of these disparate means of accomplishing this element. The jury could agree, therefore, that appellant intended to assault S.M., but need not agree on whether the assault was accomplished by causing fear or inflicting or attempting to inflict bodily harm.[3]

We conclude that the district court did not plainly err by failing to instruct the jury that it must unanimously determine which action, among several proved, supported the element of assault in a charge of domestic assault.

### DECISION

The district court did not err in its jury instruction for domestic assault when the court did not require the jury to unanimously agree on a single means of committing the element of assault.

**Affirmed.**

---

3. While we conclude that failure to instruct the jury in the alternative under these circumstances was not plain error, this quandary could be eliminated entirely by charging the various means for committing assault in separate counts.