*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2012).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A14-0329**

State of Minnesota,
Respondent,

vs.

Abdirahman Ali Moallin,
Appellant.

**Filed December 22, 2014
Affirmed
Smith, Judge
Dissenting, Ross, Judge**

Olmsted County District Court
File No. 55-CR-13-4553

Lori Swanson, Attorney General, St. Paul, Minnesota; and

Mark A. Ostrem, Olmsted County Attorney, James P. Spencer, Assistant County Attorney, Rochester, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Jenna Yauch-Erickson, Assistant Public Defender, St. Paul, Minnesota (for appellant)

Considered and decided by Ross, Presiding Judge; Smith, Judge; and Harten, Judge.*

---

* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

UNPUBLISHED OPINION

**SMITH**, Judge

We affirm appellant's conviction for second-degree assault because the district court's instructions to the jury on the elements of second-degree assault and unanimity were not plain error.

## FACTS

In the early hours of July 11, 2013, Appellant Abdirahman Moallin entered Kathy's Pub, a bar from which he had previously been barred. A bouncer saw Moallin and told him to leave. Moallin refused and resisted the bouncer's efforts to physically remove him. A bartender, who also sometimes worked security at the bar, met them and attempted to assist the bouncer in removing Moallin, but Moallin continued to resist. The bouncer and bartender decided to detain Moallin and call the police so that he would receive a trespassing citation.

The bartender and bouncer waited for the police in the bar with Moallin, then began moving him to the street level after they felt a sufficient amount of time had passed. Once on the street, the bartender reentered the bar, and the bouncer detained Moallin without physically restraining him while continuing to await the police. The bouncer stood with his face to Moallin and the bar and his back to the street. Moallin asked to leave at that point, but the bouncer told him he had to wait for the police.

The two calmly waited for several minutes before a bicyclist rode up and told the bouncer to let Moallin leave. The bouncer turned his face away from Moallin to look at the bicyclist, then he heard Moallin say, "I'm going to f---ing—," before turning around

2

to see Moallin swing at his throat with a knife.  The bouncer then pulled Moallin to the ground by his arm and restrained him.  Moallin refused to release the knife, so the bouncer punched him in the face several times.  Having seen and heard what happened from inside the bar, the bartender ran outside and removed the knife from Moallin's grasp.

Police arrived within minutes, and the bartender gave the knife to police and stated, "The guy pulled a knife on us."  Officers interviewed the bouncer and the bartender.  Police placed Moallin in handcuffs and sent him to the hospital for medical treatment.

On July 12, 2014, the state charged Moallin with second-degree assault with a dangerous weapon and two counts of stalking.  During the jury trial, the bouncer, the bartender, and a bar patron who was watching through the bar's glass door testified that Moallin swung a knife at the bouncer.  The prosecution also played the bar's security footage for the jury, although it does not show Moallin's hands or the knife because the view was blocked.  In addition, several police officers testified that, when interviewed, the bouncer, the bartender, and the bar patron had all previously given consistent statements to the police.

At the close of the trial, the district court reviewed a copy of the jury instructions with the parties, who did not object.  The district court also confirmed that changes requested by defense counsel had been satisfactorily incorporated, including a request to add language defining "intentionally" and "with intent to."  The district court instructed the jury on the elements of second-degree assault with a dangerous weapon and stalking,

3

the elements required to find assault, and the statutory definitions of "intentionally" and "with intent to." The jury found Moallin guilty of second-degree assault and stalking.

## D E C I S I O N

Moallin argues that the district court committed plain error by (1) failing to instruct the jury on the state-of-mind requirements of assault-harm and assault-fear and (2) failing to instruct the jury that it must have unanimous agreement on the state-of-mind element. We review unobjected-to jury instructions for plain error. *State v. Hayes*, 831 N.W.2d 546, 555 (Minn. 2013). "Under a plain error analysis, [appellant] must show that (1) there was error; (2) the error was plain; and (3) his substantial rights were affected. An error is plain if it contravenes case law, a rule, or a standard of conduct." *Id.* (citations and quotations omitted). "[A]n error affects substantial rights if there is a reasonable likelihood that the error had a significant effect on the jury's verdict." *State v. Vance*, 734 N.W.2d 650, 656 (Minn. 2007), *overruled on other grounds by State v. Fleck*, 810 N.W.2d 303 (Minn. 2012). "If these three prongs are met, the appellate court then assesses whether it should address the error to ensure fairness and the integrity of the judicial proceedings." *State v. Griller*, 583 N.W.2d 736, 740 (Minn. 1998).

District courts have "considerable latitude" in crafting jury instructions and should be reversed only when the instructions "materially misstate[] the law" or are "misleading or confusing on fundamental points of law." *State v. Caine*, 746 N.W.2d 339, 353 (Minn. 2008). We review jury instructions as a whole to determine whether the district court erred. *Id.* The instructions must define the crime and its elements. *Vance*, 734 N.W.2d at 656.

4

## A.

Moallin first argues that the district court committed plain error when it failed to instruct the jury on the state-of-mind elements of assault-harm and assault-fear. In *Fleck*, the supreme court held that Minn. Stat. § 609.02, subd. 10 (2012) encompasses assault-fear and assault-harm. 810 N.W.2d at 312. Assault-fear requires that the defendant act with the specific intent of causing fear of immediate bodily harm or death in the victim. *Id.* Assault-harm is a general-intent crime that requires an intentional physical act resulting in bodily harm to the victim. *Id.* No specific intent to cause bodily harm is required. *Id.* Moallin contends that, in *Fleck*, the supreme court separated assault into two distinct crimes, rather than alternative forms of a single crime, therefore the district court failed to adequately explain the distinction in its jury instructions because it merely read the statutes and the statutory definitions of the elements without elaboration on intent.

Moallin's argument is unconvincing. It is not clear from *Fleck* that assault-fear and assault-harm are distinct crimes. The statutory language defining assault reads as a single sentence providing three alternative circumstances that satisfy the definition of assault. While the supreme court referred to assault-harm as a general-intent "crime" and assault-fear as a specific-intent "crime," it also referred to them both as different forms of an assault crime. *Id.* at 312. However, we need not decide whether assault-fear and assault-harm are distinct crimes because it was not alleged that Moallin committed assault by harming the bouncer.

First, Minn. Stat. § 609.02, subd. 10 enumerates *three* means of committing assault, either by (1) causing fear of immediate bodily harm in the victim, (2) actually harming the victim, or (3) attempting to harm the victim. Assault-attempt has not yet been held to be a separate crime or to require specific versus general intent. *Fleck*, 810 N.W.2d at 312 n.5. Moallin's brief assumes that assault-attempt is a general-intent crime subsumed under assault-harm, but an attempt requires specific intent. *See* Minn. Stat. § 609.17, subd. 1 (2012) (defining other attempt crimes); *State v. Noble*, 669 N.W.2d 915, 919 (Minn. App. 2003) ("An attempt requires that the actor have the specific intent to perform acts and attain a result which if accomplished would constitute the crime alleged."), *review denied* (Minn. Dec. 23, 2003).

Second, it was never alleged that Moallin committed assault-harm. The bouncer testified that he was not stabbed, injured, or harmed in any way. Because harm was never alleged, a reasonable jury could return a guilty verdict only if it found that Moallin either acted with intent to cause fear or attempted to inflict bodily harm. Both forms of assault require Moallin to have a specific intent, either to cause fear or to inflict bodily harm.

Moreover, there was no error because the district court gave adequate instructions on the intent that must be proved in order to return a guilty verdict. In fact, defense counsel actually acknowledged that the instructions satisfactorily defined intent before they were read. The jury instructions followed 10 *Minnesota Practice*, CRIMJIG 13.01, 13.10 (2006), with added statutory definitions of "intentionally" and "with intent to." The jury instructions explained:

6

> The Statutes of Minnesota provide that whoever does an act **with intent to** cause fear in another person of immediate bodily harm or death or **intentionally** inflicts or attempts to inflict bodily harm upon another is guilty of a crime.
>
>     **"Intentionally" means that the actor either has a purpose to do the thing** or cause the result specified or believes that the act performed by the actor if successful will cause the result. In addition, the actor must have knowledge of those facts that are necessary to make the actor's conduct criminal and that are set forth after the word "intentionally."
>
>     **"With intent to"** or "intent that" **means that the actor has a purpose to do the thing or cause the result specified** or believes that the act, if successful, will cause that result.

Put together, the instructions explained that "with intent to cause fear" means that the actor has a purpose to cause fear or believes it will result from his act, and "intentionally attempts to inflict bodily harm" means that the actor has a purpose to inflict bodily harm or believes it will result from his act. Thus, the district court adequately explained the specific intent elements of assault-fear and assault-attempt. *See State v. Blawat*, 399 N.W.2d 671, 673 (Minn. App. 1987) (holding that reading CRIMJIG 13.06, now renumbered as 13.10, was an adequate instruction without the additional instruction on specific intent). Moallin's proposed instruction[1] does not clearly address assault-attempt and does not add much to the instruction provided, except a statement that assault-fear is specific intent and assault-harm is general intent, which would not be particularly illuminating to a jury. Therefore, the jury instruction did not materially misstate the law and was not misleading or confusing.

---

[1] The proposed instruction for assault-fear reads: "Assault-fear is a specific intent crime. To be guilty of assault-fear[,] the defendant must intend to cause a specific result, namely, fear in another. To find Moallin guilty of assault-fear[,] you must find that Moallin intended to cause [the bouncer] to feel fear."

7

And even if there had been plain error, it would not have affected Moallin's substantial rights because there is no reasonable likelihood that another instruction would have altered the outcome in this case. Moallin has the "heavy burden" of showing that "the error was prejudicial and affected the outcome of the case." *Griller*, 583 N.W.2d at 741. There was ample evidence for the jury to conclude that Moallin possessed the requisite specific intent for assault-fear and assault-attempt. The bouncer testified that he heard Moallin say, "I'm going to f---ing—" before coming at him with a knife. The bartender testified that he heard Moallin say, "I'm going to f---ing kill you," and saw Moallin approach the bouncer with a knife. A bar patron testified that he saw the bouncer and Moallin scuffle, then he saw the bartender remove a knife from Moallin's hand. Two law enforcement officers testified that, on the night of the offense, the bouncer and the bartender made statements that were consistent with their testimony. In addition, the jury viewed security footage from the bar, wherein Moallin's hands were blocked from view by a bar patron, but that was otherwise consistent with the bouncer's account of the attack. Moallin's alternative theory that the bar staff planted the knife on him just before the arrival of police to cover up for beating him was unlikely to generate reasonable doubt in comparison. Based on the substantial amount of evidence, there is no reasonable likelihood that, had the district court used an instruction like the one proposed on appeal, the outcome would have been different.

**B.**

Moallin also argues that the district court committed plain error when it failed to instruct the jury that it must have unanimous agreement on every element of the crime,

8

including the state-of-mind element. "Jury verdicts in all criminal cases must be unanimous," and the jury must unanimously agree that each element of the offense has been proven. *State v. Pendleton*, 725 N.W.2d 717, 730-31 (Minn. 2007) (citing Minn. R. Crim. P. 26.01, subd. 1(5)). But unanimity is not required with respect to alternate means of satisfying an element of the offense. *See State v. Ihle*, 640 N.W.2d 910, 918 (Minn. 2002). Different state-of-mind requirements may be offered to prove an element so long as they show "equivalent blameworthiness or culpability." *State v. Dalbec*, 789 N.W.2d 508, 511 (Minn. App. 2010).

On unanimity, the district court instructed the jury that "each juror must agree with the verdict." The district also instructed the jury that it must find that Moallin assaulted the bouncer in order to return a guilty verdict and that the assault required "intentional infliction of bodily harm," "an intentional attempt to inflict bodily harm," or "an act done with intent to cause fear," but the district court did not instruct the jury that it must unanimously agree on which of those bases for assault applied.

In *Dalbec*, a domestic assault case, we held that a district court did not err by failing to instruct the jury that there must be unanimity on whether the defendant committed assault by harm, attempt, or fear. 789 N.W.2d at 513. Similarly here, the states of mind required for assault-fear and assault-attempt require equivalent levels of culpability, either an intent to put someone in fear of bodily harm or an intent to actually harm someone. Although the charged offense in *Dalbec* differs from this one, the issues are nearly identical. While Moallin argues that *Fleck* overruled *Dalbec*, the argument is not persuasive. *Fleck* considered whether the defendant was entitled to an instruction on

9

voluntary intoxication, which would apply only if the charged offense required specific intent. 810 N.W.2d at 307. To resolve that question, the supreme court was required to determine whether any of the means of committing assault required specific intent, thus overruling prior caselaw about the state-of-mind requirements of various forms of assault, but it did not address whether unanimity was required on the means of committing assault. *Id.* at 311-12. It therefore did not overrule *Dalbec*, and the district court did not err by failing to instruct the jury that it must reach a unanimous agreement on the means of assault.

Even if there had been an error, it did not affect Moallin's substantial rights because there was no reasonable likelihood that an instruction that the jury must unanimously agree on the means of assault would have affected the outcome. To find Moallin guilty of assault, the jury was required to unanimously find that Moallin had an intent to injure the bouncer, which it did. Therefore, the jury unanimously found that Moallin possessed the intent required for assault-attempt.

**Affirmed.**

**ROSS**, Judge (dissenting)

The majority concludes that this court's decision in *State v. Dalbec*, 789 N.W.2d 508 (Minn. App. 2010), is unaltered by the supreme court's decision in *State v. Fleck*, 810 N.W.2d 303 (Minn. 2012). Because that conclusion drives the majority's decision today, and because I believe the conclusion is flawed, I respectfully dissent.

The *Dalbec* court considered whether two provisions of the domestic abuse statute—one provision that defines assault as an act done with intent to cause fear of immediate bodily harm and the other that defines assault as an act that intentionally inflicts bodily harm—are different *elements* of domestic assault or are instead merely different means to commit the same crime. If they are different elements, each must be proved by the state and each must be found unanimously by the jury. *See* Minn. R. Crim. P. 26.01, subd. 1(5); *State v. Pendleton*, 725 N.W.2d 717, 730–31 (Minn. 2007) ("[A] jury must unanimously find that the government has proved each element of the offense." (quotation omitted)). We held in *Dalbec* that the different provisions are "alternative means by which an assault may be committed, either by intentionally causing fear of immediate bodily harm . . . or by intentionally inflicting . . . bodily harm." 789 N.W.2d at 512–13.

The majority today rejects Moallin's argument that our holding in *Dalbec* is undermined by the supreme court's holding in *Fleck*. It does so by reasoning that *Fleck* addressed only whether "any of *the means* of committing assault required specific intent" and that it did not consider "whether unanimity was required on *the means* of committing assault." (Emphasis added.) And it concludes that, "It is not clear from *Fleck* that assault-

D-1

fear and assault-harm are distinct crimes." I read Fleck differently, and I think the majority errs.

The *Fleck* court addressed the general assault provision of section 609.02, which defines "[a]ssault" as "(1) an act done with intent to cause fear in another of immediate bodily harm or death; or (2) the intentional infliction of or attempt to inflict bodily harm upon another." Minn. Stat. § 609.02, subd. 10 (2012). Contrary to the majority's characterization, the *Fleck* court nowhere calls these different provisions merely "the *means*" of committing the same offense. Instead, the *Fleck* decision indeed makes it clear that assault-fear and assault-harm are distinct crimes. More than a dozen times, the *Fleck* court referred to these as separate *offenses*, but it never describes them as different *means* to complete the same offense; it repeatedly called one "an assault-fear *offense*" and the other "an assault-harm *offense*." 810 N.W.2d at 303–12 (emphasis added). This continuous distinction culminates with the court expressly describing each as a separate "crime" in its holding:

> We now clarify that assault-harm, Minn. Stat. § 609.02, subd. 10(2) (prohibiting the intentional infliction of bodily harm), is a general-intent *crime*, that assault-fear, Minn. Stat. § 609.02, subd. 10(1) (prohibiting an act done with the intent to cause fear in another of immediate bodily harm or death) is a specific-intent *crime*.

*Id.* at 312, (emphasis added).

For these reasons I agree with Moallin's argument, and I disagree with the state's: *Fleck* at least undermines our rationale in *Dalbec*, and it may implicitly overrule it.