*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A15-1096**

State of Minnesota,
Respondent,

vs.

Laco Knockola West,
Appellant.

**Filed September 12, 2016
Affirmed
Halbrooks, Judge**

Washington County District Court
File No. 82-CR-14-3624

Lori Swanson, Attorney General, St. Paul, Minnesota; and

Pete Orput, Washington County Attorney, Nicholas A. Hydukovich, Stillwater, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Sara L. Martin, Assistant Public Defender, St. Paul, Minnesota (for appellant)

Considered and decided by Jesson, Presiding Judge; Halbrooks, Judge; and Hooten, Judge.

**UNPUBLISHED OPINION**

**HALBROOKS**, Judge

Appellant challenges his conviction of felony violation of an order for protection (OFP), arguing that the cumulative effect of several alleged errors deprived him of his due-process right to a fair trial. We affirm.

**FACTS**

On March 28, 2014, the district court issued an emergency ex parte OFP against appellant Laco Knockola West. The OFP prohibited West from having contact with his ex-girlfriend, A.L., "whether in person, with or through other persons, by telephone, mail, e-mail, through electronic devices, social media, or by any other means." The district court granted the OFP for a minimum of two years.

From August 6, 2014, to August 23, 2014, West sent approximately 48 text messages to A.L. The text messages mainly consisted of incoherent ramblings in which West discussed his opinions regarding A.L. and the OFP, his children, and sexually explicit song lyrics that he wrote. In some of the text messages, West referred to himself as L.C., which is his nickname. West also left two voicemail messages for A.L. during this time period.

A.L. initially delayed going to the police because she "was hoping [West] would go away." But after thinking about it and speaking with her family, A.L. went to the police department to report West's contact with her.

The state subsequently charged West with one count of felony violation of an OFP. The jury heard the foregoing evidence at trial. Deputy Timothy Schmidtke

2

testified that he personally served the OFP on West while West was incarcerated at the Minnesota Correctional Facility in Faribault. The district court also allowed the prosecutor to introduce relationship evidence under Minn. Stat. § 634.20 (2014) over West's objection. West chose not to testify after the district court ruled that the prosecutor would be allowed to impeach him with three prior convictions if he testified. The jury found West guilty. This appeal follows.

## DECISION

### I.

West argues that the district court committed reversible plain error by not providing a specific unanimity instruction to the jury because the jury heard evidence of multiple acts that violated the OFP. West's counsel neither objected nor proposed that the district court should instruct the jury that it had to agree unanimously on which specific incident violated the OFP. A defendant's failure to propose a specific jury instruction generally constitutes a forfeiture of that issue on appeal. *State v. Vance*, 734 N.W.2d 650, 654 (Minn. 2007). But appellate courts have discretion to consider a claim of unobjected-to error "if there was plain error affecting substantial rights or an error of fundamental law in the jury instructions." *State v. Crowsbreast*, 629 N.W.2d 433, 437 (Minn. 2001) (quotation omitted). Under the plain-error doctrine, West must show that there was (1) an error, (2) that the error was plain, and (3) that it affected his substantial rights. *State v. Taylor*, 869 N.W.2d 1, 15 (Minn. 2015). Even if West satisfies these three prongs, we may reverse his conviction only if the error "seriously affect[s] the

3

fairness, integrity, or public reputation of judicial proceedings." *Id.* (alteration in original) (quotation omitted).

A jury must unanimously find that the prosecutor proved each element of the charged offense in order to find the defendant guilty. *State v. Dalbec*, 789 N.W.2d 508, 511 (Minn. App. 2010), *review denied* (Minn. Dec. 22, 2010). And "the jury must unanimously agree on which acts the defendant committed if each act itself constitutes an element of the crime." *State v. Stempf*, 627 N.W.2d 352, 355 (Minn. App. 2001). "But the jury need not always decide unanimously which of several possible sets of underlying brute facts make up a particular element, [such as] which of several possible means the defendant used to commit an element of the crime." *Dalbec*, 789 N.W.2d at 511 (alteration in original) (quotation omitted).

West relies on *Stempf* to support his argument. In *Stempf*, the state charged the defendant with one count of drug possession but alleged two distinct acts to support the conviction: that he possessed methamphetamine at his workplace and that he possessed methamphetamine in a truck. 627 N.W.2d at 357. This court concluded that Stempf was deprived of his right to a unanimous verdict because the state did not elect which act of possession it relied on for the conviction. *Id.* at 358. As a result, the jurors may have disagreed on which act of possession constituted that element of the crime. *Id.* This court further concluded that "[t]he two acts alleged in this case lack unity of time and place; they are separate and distinct culpable acts, either one of which could support a conviction." *Id.* at 358-59. This court therefore reversed and remanded for further

4

proceedings because it was "possible that the jury's verdict of guilty was not unanimous." *Id.* at 359.

In addition to being completely different factually, West's case is distinguishable from *Stempf* in two critical ways. First, the district court in *Stempf* refused to give a specific unanimity instruction after Stempf requested the instruction. *Id.* at 357-58. Here, West did not request a specific unanimity instruction. Second, in *Stempf*, the act of possession was an element of the crime, not merely a means of proving the element of possession, so the jury had to agree unanimously on one act of possession that had been proved beyond a reasonable doubt. *Id.* at 357; *see Dalbec*, 789 N.W.2d at 512 (discussing *Stempf*). Here, one of the elements that the state needed to prove was that West violated the OFP. *See* Minn. Stat. § 518B.01, subd. 14(b) (2014). The OFP prohibited West from contacting A.L. by phone or "any other means." "[T]he two acts in *Stempf* were elements of the crime, whereas [appellant's] actions in this case were mere means for accomplishing an element." *State v. Infante*, 796 N.W.2d 349, 357 (Minn. App. 2011). Any one of West's text messages or voicemails constituted a means by which he committed the element of violating the OFP. And the jurors did not have to agree unanimously on the means that West used to commit this element. We therefore conclude that no error exists here. West was not denied his right to a unanimous verdict.

**II.**

West contends that the district court abused its discretion by allowing the state to introduce relationship evidence under Minn. Stat. § 634.20. The district court allowed A.L. to testify that West violated multiple past OFPs by contacting her and coming to her

5

home or place of employment. A.L. also testified about a specific incident in which West violated an OFP by breaking into A.L.'s home, threatening to kill her, and punching her multiple times in the face. The district court allowed the state to introduce photographs of A.L.'s face that were taken after this incident. The photographs depict A.L.'s bruised, bloody, and swollen face.

We review the admission of relationship evidence under Minn. Stat. § 634.20 for an abuse of discretion. *State v. Matthews*, 779 N.W.2d 543, 553 (Minn. 2010). The statute provides:

> Evidence of domestic conduct by the accused against the victim of domestic conduct, or against other family or household members, is admissible unless the probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issue, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

Minn. Stat. § 634.20. Domestic conduct includes evidence of domestic abuse and violation of an OFP. *Id.* The statutory definition of domestic abuse includes physical harm, bodily injury, or assault committed by a family or household member against another family or household member. Minn. Stat. § 518B.01, subd. 2(a)(1) (2014).

West argues that the OFP violation here was not similar to the prior assault of A.L. that the state offered as relationship evidence. A previous version of section 634.20 used the term "similar conduct" in place of "domestic conduct." *State v. Fraga*, 864 N.W.2d 615, 627 n.12 (Minn. 2015). Although the statute was amended in 2013 to replace "similar conduct" with "domestic conduct," the supreme court has noted that "the 2013 amendment did not change the underlying definition." *Id.* Indeed, the definition of

6

"domestic conduct" in the current statute is identical to the definition of "similar conduct" in the previous version of the statute. *Compare* Minn. Stat. § 634.20 (2014), *with* Minn. Stat. § 634.20 (2012). The evidence of West's prior OFP violations and physical harm to A.L. therefore meets the definition of domestic conduct under the statute. In any event, the evidence of West's prior domestic conduct was similar to the charged crime because the relationship evidence involved West's violations of OFPs.

West also argues that the probative value of the relationship evidence was substantially outweighed by its potential for unfair prejudice. The district court determined that the relationship evidence was probative and admissible. The district court was more hesitant to admit the photographs into evidence and acknowledged that they were "a little closer to the line." The prosecutor stated that he intended to introduce the photographs to show the context of the relationship between West and A.L. and because West's theory of the case was that A.L. contacted him first. The district court ultimately allowed the photographs into evidence, concluding that the photographs were more probative than prejudicial for the purposes of showing the context of the relationship.

The Minnesota Supreme Court has stated that evidence of prior domestic abuse "is evidence of prior conduct between the accused and the alleged victim and it may be offered to illuminate the history of the relationship, that is, to put the crime charged in the context of the relationship between the two." *State v. McCoy*, 682 N.W.2d 153, 159 (Minn. 2004). "[T]he interests of justice are best served by admitting relationship evidence when it provides context for the crime charged." *Matthews*, 779 N.W.2d at 553

7

(quotation omitted). Allowing the relationship evidence here was probative because, as the district court determined, it provided the jury with context of the relationship between West and A.L. It provided a context for the charged crime by illustrating the history of domestic abuse and OFP violations that existed in their relationship. Although the district court acknowledged a potential for unfair prejudice when it admitted the relationship evidence, the district court was careful to take the necessary step to ensure that the jury would not use the evidence for an impermissible purpose by giving a cautionary instruction, specifically warning the jury that it could not convict West of the charged crime on the basis of his prior assault of A.L. *See State v. Riddley*, 776 N.W.2d 419, 428 (Minn. 2009) ("We presume a jury follows a court's cautionary instruction."). Because the relationship evidence here falls within the statutory definition of domestic conduct and because the probative value outweighed its danger for unfair prejudice, the district court did not abuse its discretion by allowing the state to introduce it.

### III.

West argues that the district court abused its discretion by allowing evidence that A.L. had a confidential address and was in the Safe at Home program. A.L. testified that she lived in Washington County and that she had a confidential address through the Safe at Home program because of West. The Safe at Home program provides address confidentiality for victims of domestic violence and enables them "to use an address designated by the secretary of state as a substitute mailing address for all purposes." Minn. Stat. § 5B.01 (2014).

Minnesota law provides alternative venues for prosecuting OFP violations:

8

A person may be prosecuted [for violating an OFP] at the place where any call is made or received or, in the case of wireless or electronic communication or any communication made through any available technologies, where the actor or victim resides, or in the jurisdiction of the victim's designated address if the victim participates in the address confidentiality program established under chapter 5B.

Minn. Stat. § 518B.01, subd. 14a (2014). Although West argues that A.L.'s testimony that she had a confidential address was irrelevant, it was relevant as a possible way to establish venue under the statute. West could have stipulated to venue. But he instead exercised his right to have the state prove venue beyond a reasonable doubt. *See State v. Ehmke*, 752 N.W.2d 117, 120 (Minn. App. 2008) ("Venue is an element of an offense that must be proved beyond a reasonable doubt."). The state was therefore entitled to elicit this testimony as a possible way to establish venue under the statute.

## IV.

West argues that the district court committed reversible plain error by allowing the state to introduce evidence that West was incarcerated when Deputy Schmidtke served him with the OFP. Because West did not object to Deputy Schmidtke's testimony, we review for plain error. *Taylor*, 869 N.W.2d at 15. West again must show that there was (1) an error, (2) that the error was plain, and (3) that it affected his substantial rights. *Id.*

West asserts that "[t]here was no legitimate reason for the jury to learn West was incarcerated." But the state was required to prove that West knew of the OFP in order to prove that he was guilty of the crime. *See* Minn. Stat. § 518B.01, subd. 14(b). The state therefore needed to elicit testimony from Deputy Schmidtke that he served West with the OFP. Although West argues that the state could have established this element of the

9

crime simply by having Deputy Schmidtke testify that he served West with the OFP, this apparently was not possible under the circumstances. Deputy Schmidtke testified that he is a civil-process deputy. His sole duty is serving documents that are required to be served by the sheriff's office. When asked about the day he served West with the OFP, Deputy Schmidtke testified that he remembered serving one or more inmates at the correctional facility that day, implying that he would not be able to recall serving a specific individual. Deputy Schmidtke then agreed that if the court record indicates that he personally served West on that date, it would be accurate because the record would rely on his affidavit of service. Allowing this testimony was not an error that was plain because the state needed to elicit this information from Deputy Schmidtke in order to prove that West knew of the existence of the OFP.

Even if West could show that a plain error occurred, he cannot show that it affected his substantial rights. To satisfy this prong of the plain-error test, West bears the "heavy burden" of showing that the error was prejudicial and affected the outcome of his trial. *State v. Griller*, 583 N.W.2d 736, 741 (Minn. 1998). Deputy Schmidtke's testimony that West was incarcerated could not have affected the outcome of the trial because several text messages that West sent to A.L. referenced his being in prison. In one text message, West wrote, "God knows that I didn't come out of prison for this." In another, West wrote, "Put myself back in prison to show that that's a lie by you . . . ." From the text messages admitted into evidence, the jury already knew that West had been in prison. West therefore was not prejudiced by Deputy Schmidtke's brief testimony that he served West at a correctional facility.

10

## V.

West argues that the district court abused its discretion by ruling that the prosecutor could impeach him with prior convictions if he chose to testify. The district court ruled that the prosecutor could impeach West with his convictions of check forgery, felony violation of a no-contact order, and first-degree burglary if he testified, although the prosecutor would be allowed to refer to the conviction of violating the no-contact order only as an unspecified felony. West concedes that the check-forgery conviction was admissible to impeach him but challenges the district court's decision with respect to the other two convictions.

Evidence that a witness has been convicted of a felony is admissible for attacking the witness's credibility if "the court determines that the probative value of admitting this evidence outweighs its prejudicial effect." Minn. R. Evid. 609(a)(1). "When evaluating whether prior convictions are admissible for impeachment, a court considers five factors set out in *State v. Jones*, 271 N.W.2d 534, 537-38 (Minn. 1978)." *State v. Swanson*, 707 N.W.2d 645, 653 (Minn. 2006). Those factors are:

> (1) the impeachment value of the prior crime, (2) the date of the conviction and the defendant's subsequent history, (3) the similarity of the past crime with the charged crime (the greater the similarity, the greater the reason for not permitting use of the prior crime to impeach), (4) the importance of defendant's testimony, and (5) the centrality of the credibility issue.

*Jones*, 271 N.W.2d at 538. We review a district court's ruling on the admissibility of prior convictions for impeachment of a defendant for a clear abuse of discretion. *Swanson*, 707 N.W.2d at 654.

11

### A. Impeachment Value of Prior Crime

The district court found that West's prior convictions had impeachment value. "[A] prior conviction can have impeachment value by helping the jury see the whole person of the defendant and better evaluate his or her truthfulness." *Id.* (quotation omitted). When impeaching with convictions that do not involve dishonesty or false statements, "it is the general lack of respect for the law, rather than the specific nature of the conviction, that informs the fact-finder about a witness's credibility." *State v. Hill*, 801 N.W.2d 646, 652 (Minn. 2011). "In other words, *any* felony conviction is probative of a witness's credibility, and the mere fact that a witness is a convicted felon holds impeachment value." *Id.* Because the felonies were probative of West's credibility, this factor favored admission.

### B. Date of Conviction and Appellant's Subsequent History

A conviction is generally not admissible to impeach the credibility of a witness if more than ten years have elapsed since the date of the conviction. *See* Minn. R. Evid. 609(b). West's no-contact-order violation and burglary conviction are both from 2011. The district court found that "[t]he date and subsequent history regarding each of those convictions falls well within the appropriate limits to allow admission of that impeachment." Because the impeachment convictions occurred within ten years, this factor weighed in favor of admission.

### C. Similarity of Past Crime with Charged Crime

"The more similar the alleged offense and the crime underlying a past conviction, the more likely it is that the conviction is more prejudicial than probative." *Swanson*, 707

12

N.W.2d at 655. The Minnesota Supreme Court has held that Minn. R. Evid. 609(a) allows a party to impeach a witness with unspecified felony convictions. *Hill*, 801 N.W.2d at 652. The decision regarding whether to disclose the nature of the impeachment conviction "remains within the sound discretion of the district court." *Id.* The burglary conviction was not similar to the charged crime of violating an OFP. The district court ruled that the state would only be allowed to refer to West's conviction of violating the no-contact order as an unspecified felony. The district court acted well within its discretion to make this decision because violating a no-contact order and violating an OFP are similar in that they both prohibit contact with a protected person. This factor favored admission.

### D. Importance of West's Testimony and Centrality of Credibility

The fourth and fifth *Jones* factors are often analyzed together. *See Swanson*, 707 N.W.2d at 655 (grouping the fourth and fifth *Jones* factors together); *State v. Gassler*, 505 N.W.2d 62, 67 (Minn. 1993) (same). "If credibility is a central issue in the case, the fourth and fifth *Jones* factors weigh in favor of admission of the prior convictions." *Swanson*, 707 N.W.2d at 655. The district court determined that credibility was "very much an issue" in the case. Credibility was central to the case because West likely would have denied being guilty of violating the OFP if he had testified, thereby forcing the jury to make a credibility determination. These factors therefore weighed in favor of admission.

On balance, the *Jones* factors weighed in favor of admitting the prior convictions for impeachment purposes. Therefore, the district court did not abuse its discretion by allowing the prosecutor to use them to impeach West had he chosen to testify.

**VI.**

West contends that the cumulative effect of these alleged errors deprived him of his due-process right to a fair trial. The Minnesota Supreme Court has held that, "in rare cases, that the cumulative effect of trial errors can deprive a defendant of his constitutional right to a fair trial when the errors and indiscretions, none of which alone might have been enough to tip the scales, operate to the defendant's prejudice by producing a biased jury." *State v. Davis*, 820 N.W.2d 525, 538 (Minn. 2012) (quotation omitted). But because West has not established even one error, plain or otherwise, there can be no cumulative error. We conclude that West was not deprived of his right to a fair trial.

**Affirmed.**