*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A15-2014**

State of Minnesota,
Respondent,

vs.

Euric Ards,
Appellant.

**Filed December 5, 2016
Affirmed
Jesson, Judge**

Ramsey County District Court
File No. 62-CR-15-3015

Lori Swanson, Attorney General, St. Paul, Minnesota; and

John J. Choi, Ramsey County Attorney, Thomas Ragatz, Assistant County Attorney, St. Paul, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Anders Erickson, Assistant Public Defender, St. Paul, Minnesota (for appellant)

Considered and decided by Jesson, Presiding Judge; Stauber, Judge; and Reyes, Judge.

## U N P U B L I S H E D   O P I N I O N

**JESSON**, Judge

Appellant Euric Ards argues that the district court committed reversible error by failing to instruct the jury on unanimity and by entering judgments of conviction for both

violating a domestic abuse no-contact order and violating an order for protection. Ards also raises several issues in a pro se supplemental brief. Because no specific unanimity instruction was required and both of Ards's protective-order violation convictions are permissible, and because Ards's pro se arguments are without merit, we affirm.

## FACTS

Ards was in a relationship with a woman, J.M.F., for approximately 17 years. They had at least one child together. According to J.M.F., the relationship deteriorated in recent years because of Ards's drug use. In July 2014, J.M.F. obtained an order for protection against Ards. Then, in December 2014, a domestic abuse no-contact order was entered against Ards for the protection of J.M.F. Ards was ordered to stay away from J.M.F.'s residence.

In April 2015, Ards returned to Minnesota after spending several months in his home state of Mississippi. Approximately one week after his return, on April 25, 2015, Ards came to J.M.F.'s residence in the early morning hours. J.M.F. saw Ards on her porch, and she called 911. Officers responded, but they were unable to find Ards. Through the course of that early morning, Ards kept coming back to J.M.F.'s house, apparently seeking to retrieve some personal property. Shortly after 9:00 a.m., J.M.F. called 911 because she saw Ards in her alley. During that call, J.M.F. said Ards was in her garage "tearing something up." Police responded, and it was discovered that J.M.F.'s garage had been entered and her car windows broken. Officers were initially unable to locate Ards, but he was later apprehended at a different location.

2

On April 27, 2015, Ards was charged with three crimes: (1) violating a domestic abuse no-contact order with prior qualified convictions; (2) violating an order for protection with prior qualified convictions; and (3) fourth-degree criminal damage to property.

At trial, Ards denied being at J.M.F.'s residence on April 25, 2015. The jury found Ards guilty of all three charges. The district court adjudicated Ards guilty on all three counts, but, finding that the protective-order violations were part of a single course of conduct,[1] only sentenced him on one of the protective-order violations. This appeal follows.

## DECISION

Three issues are presented in this case. First, Ards argues that the district court committed reversible plain error by not providing specific unanimity jury instructions. Second, Ards argues that the district court erred by convicting him of both violating a domestic abuse no-contact order and violating an order for protection. Third, Ards raises a number of pro se arguments. We address each issue in turn.

---

[1] While the district court utilized the phrase "single course of conduct," we interpret its decision to refer to a "single behavioral incident" under Minn. Stat. § 609.035 (2014), which prohibits multiple sentences for conduct that "constitutes more than one offense." *See State v. Jones*, 848 N.W.2d 528, 531 n.1 (Minn. 2014) (stating that "in the past, we have used the phrases 'single course of conduct' and 'single behavioral incident' interchangeably").

3

**I.    The district court did not commit plain error by failing to give specific unanimity jury instructions.**

Ards argues the district court erred by not providing specific unanimity jury instructions, violating his right to a unanimous verdict. Ards asserts unanimity instructions were needed because the state presented evidence of three separate acts that could have satisfied the elements of the protective order charges: (1) Ards was at J.M.F.'s property around midnight; (2) Ards was at J.M.F.'s property around 6:45 a.m.; and (3) Ards was at J.M.F.'s property around 9:00 a.m.

The parties stipulated to the fact that Ards had two prior qualified domestic violence-related convictions within the previous ten years. To prove either charge as a felony, the state needed to prove only that there was an existing protective order, that Ards was aware of that order, and that he violated the terms of that order. *See* Minn. Stat. §§ 518B.01, subd. 14 (concerning violation of order for protection), 629.75, subd. 2 (concerning violation of domestic abuse no-contact order) (2014).[2]

A jury's verdict must be unanimous in all criminal cases. Minn. R. Crim. P. 26.01, subd. 1(5). The jury must unanimously conclude that each element of an offense has been proven. *State v. Pendleton*, 725 N.W.2d 717, 730–31 (Minn. 2007). Though the jury must agree on the elements, the jury need not agree on the facts underlying those elements. *Id.* at 731. If different courses of conduct are offered to prove an element, they must show "equivalent blameworthiness or culpability." *Id.* (quotation omitted).

---

[2] The state also had to prove venue was proper. Minn. Stat. § 627.01 (2014); *State v. Ehmke*, 752 N.W.2d 117, 120 (Minn. App. 2008).

Ards neither requested a specific unanimity instruction at trial nor objected to the jury instructions. A failure to propose specific jury instructions or object to instructions generally constitutes a forfeiture of that issue on appeal. *State v. Cross*, 577 N.W.2d 721, 726 (Minn. 1998). But, even absent a failure to object, this court may still review the instructions for plain error that affects substantial rights or an error of fundamental law. *State v. Griller*, 583 N.W.2d 736, 740 (Minn. 1998); *see also State v. Gunderson*, 812 N.W.2d 156, 159 (Minn. App. 2012) (reviewing unobjected-to jury instructions for plain error).

Under the plain-error test, this court examines the jury instructions to see if there was (1) error, (2) that was plain, and (3) that affected substantial rights. *Gunderson*, 812 N.W.2d at 159. If the three prongs of the plain-error test are met, this court must then decide whether to remedy the error in order to ensure fairness and the integrity of the judicial proceedings. *Griller*, 583 N.W.2d at 740.

To support his argument that unanimity instructions were required in this case, Ards relies on *State v. Stempf*, 627 N.W.2d 352 (Minn. App. 2001). In *Stempf*, the defendant was charged with one count of possession of drugs, but the state alleged two distinct acts: (1) the defendant possessed drugs found at his workplace, and (2) the defendant possessed drugs found in a truck. *Id.* at 357. This court concluded that the defendant was deprived of his right to a unanimous verdict because the state did not elect which act of possession it relied on for the conviction, and the jurors may have disagreed on which act of possession constituted the crime. *Id.* at 358. This court further concluded that the two alleged acts lacked "unity of time and place" and were "separate and distinct culpable acts, either one

5

of which could support a conviction." *Id.* at 358-59. This court therefore reversed and remanded because it was possible that the guilty verdict was not unanimous. *Id.* at 359.

This case differs from *Stempf* for two reasons. First, in *Stempf* the district court refused to give a specific unanimity instruction, even though one was requested. *Id.* at 357-58. Here, Ards never requested a specific unanimity instruction. Second, in *Stempf* there were two separate acts of possession, and the defendant in *Stempf* offered different defenses for both, so the jury in *Stempf* could have reached different conclusions on each of those acts of possession. *Id.* at 358; *see State v. Dalbec*, 789 N.W.2d 508, 512 (Minn. App. 2010) (discussing *Stempf*), *review denied* (Minn. Dec. 22, 2010). Here, in contrast, Ards's acts were part of a single behavioral incident, and Ards offered a single defense.

Ards's acts involved the same victim, J.M.F., and the same location, J.M.F.'s residence. During one 911 call, J.M.F. stated that Ards was intent on retrieving "his stuff," and J.M.F. made a similar statement about Ards's intent that day to police. Thus, it appears Ards had a single objective. Although the exact number of visits is unclear, Ards kept returning to J.M.F.'s residence that evening and morning. During one 911 call, J.M.F. stated that Ards had been "coming by all night." As a result, Ards's acts were part of a single behavioral incident because they repeatedly occurred over the course of approximately nine hours and involved the same victim, the same objective, and the same location. *State v. Infante*, 796 N.W.2d 349, 356-57 (Minn. App. 2011); *see Dalbec*, 789 N.W.2d at 509-10 (holding district court did not err by failing to give unanimity instruction when defendant was charged with one count of assault for acts occurring over a 24–hour period). Further, upon the recommendation of the prosecutor, the protective-order

6

violations were sentenced by the district court as a single behavioral incident. If the protective-order violations had not been sentenced as a single behavioral incident, Ards could have potentially faced additional punishment. *See* Minn. Stat. § 609.035, subd. 1 (barring multiple punishments for offenses committed as part of a single behavioral incident).

Finally, Ards offered a single defense at trial: he denied being at J.M.F.'s residence on April 25, 2015. Unlike in *Stempf*, the jury in this case could not have reached different conclusions; the jury was forced to either believe Ards's defense or reject it. In sum, there was no plain error because Ards never requested a specific unanimity instruction, and Ards offered a single defense to refute a single behavioral incident.

**II.** **The district court did not err by adjudicating Ards guilty of both violating a domestic abuse no-contact order and violating an order for protection.**

Ards argues that Minnesota Statutes section 609.04 (2014) bars his conviction for violating both a no-contact order and an order for protection because proving one violation necessarily proves the other. Whether an offense constitutes an included offense is a legal question, which this court reviews de novo. *State v. Cox*, 820 N.W.2d 540, 552 (Minn. 2012).

In Minnesota, a person may not be convicted of both a "crime charged" and a second crime "necessarily proved if the crime charged were proved." Minn. Stat. § 609.04, subd. 1. An analysis of the applicability of this rule involves looking to the elements of the crimes, not the particular facts of the case. *State v. Bertsch*, 707 N.W.2d 660, 664 (Minn. 2006).

Here, the two offenses contain different elements, with the differences based primarily on the distinct protective orders underlying each offense. The relevant elements of felony violation of an order for protection are as follows: (1) there was an existing court order for protection; (2) the defendant knew of the order; (3) the defendant violated a condition of the order; and (4) the defendant committed this crime within ten years of the first of two or more previous qualified domestic violence-related offense convictions. Minn. Stat. § 518B.01, subd. 14; 10 *Minnesota Practice*, CRIMJIG 13.56 (2016). The relevant elements of felony violation of a domestic abuse no-contact order are as follows: (1) there was an existing court domestic abuse no-contact order; (2) the defendant knew of the order; (3) the defendant violated a condition of the order; and (4) the defendant committed this crime within ten years of the first of two or more previous qualified domestic violence-related offense convictions. Minn. Stat. § 629.75, subd. 2; 10 *Minnesota Practice*, CRIMJIG 13.56. Proper venue also needed to be proved for both offenses. *Ehmke*, 752 N.W.2d at 120. Because the two crimes rely on different underlying protective orders, proving one crime does not necessarily prove the other.

As a result, section 609.04 does not bar Ards's protective-order convictions because the offenses have different elements, one offense is not a lesser degree of the other, and the offenses are contained in different criminal statutes. *State v. Jackson*, 363 N.W.2d 758, 760 (Minn. 1985); *see State v. Idowu*, 272 N.W.2d 354, 354-55 (Minn. 1978) (holding that convictions for similar offenses with different elements arising out of same conduct was proper).

8

**III.** **There was sufficient evidence to convict Ards of the charged offenses, and the prosecutor's statements during closing argument were proper.**

In a pro se supplemental brief, Ards properly raises two issues that have not yet been addressed: (1) sufficiency of the evidence, and (2) improper statements by the prosecutor during closing argument. The other issues mentioned in the pro se brief are deemed forfeited. *See State v. Butcher*, 563 N.W.2d 776, 780 (Minn. App. 1997) (holding that issue was forfeited when appellant failed to develop any argument on appeal), *review denied* (Minn. Aug. 5, 1997).

Regarding sufficiency of the evidence, Ards asserts there were no witnesses. But J.M.F. testified that she saw Ards on her porch, and she testified that he kept coming back to her house. Recordings of three 911 calls from J.M.F. were submitted into evidence; they indicated that Ards continued to return to J.M.F.'s property that day, and that Ards entered J.M.F.'s garage and damaged her car windows. Even under heightened scrutiny, the circumstances proved at trial appear consistent with Ards's guilt and inconsistent with any other rational hypothesis. *State v. Al-Naseer*, 788 N.W.2d 469, 473-74 (Minn. 2010).

Finally, Ards argues the prosecutor's statement that "reasonable doubt isn't beyond all possibility of doubt and it's not with absolute certainty" was improper. This argument is without merit. The prosecutor's statements were consistent with Minnesota's jury instruction on proof beyond a reasonable doubt, which states that proof beyond a reasonable doubt does not mean beyond all possibility of doubt. 10 *Minnesota Practice*, CRIMJIG 3.03 (2016). Further, the prosecutor's statement that absolute certainty was not

9

required was proper because proof beyond a reasonable doubt does not require mathematical certainty. *State v. Smith*, 674 N.W.2d 398, 402-03 (Minn. 2004).

**Affirmed.**